73 U.S. 160
 18 L.Ed. 849
 6 Wall. 160
 REICHART
v.
FELPS.
 December Term, 1867
 
 ERROR to the Supreme Court of Illinois; the case, which was one of ejectment, being thus:
 In 1784, after the War of the Revol tion, the State of Virginia then claiming the Northwest Territory, a part of which makes the now State of Illinois—and in which, from early times, inhabitants of Canada, while Canada was yet a French province, had settled—yielded her claim and title in the territory to the United States, on condition 'that the French and Canadian inhabitants, and other settlers of the Kaskaskias, St. Vincent's, and the neighboring villages, who have professed themselves citizens of Virginia, shall have their possessions and titles confirmed to them, and be protected in the enjoyment of their rights and liberties.'
 On the 20th of June, 1788, Congress enacted, that from any general sale of lands in this region there should be a reserve of so much land as should satisfy all the just claims of the ancient settlers; 'that they should be confirmed in the possession of such lands as they may have had at the beginning of the Revolution; that measures be immediately taken for confirming them in their possessions and titles, and that the governor of the Northwestern Territory be instructed to examine the titles and possessions of the settlers, as above described, in order to determine what quantity of land they may severally claim, which shall be laid off for them at their own expense.'
 Under this authority, and some instructions not necessary to be mentioned, but reciting them all, the then governor of the Northwestern Territory, General St. Clair, on the 12th of February, 1799, issued a document, somewhat in the form of a land-patent, to one Jarrot, who 'laid claim' to a piece of land in the county then and now known as St. Clair, Illinois, 'confirming' to him in fee a tract described. This instrument of confirmation, signed by General St. Clair, and duly registered, October 19th, 1804, ended thus:
 'In testimony whereof, I have hereunto set my hand, and caused the seal of the Territory to be affixed, at Cincinnati, &c., on the 12th day of February, A.D. 1799, and of the Independence of the United States the 23d.'
 The land claimed and thus described in the patent was regularly surveyed, April 10th, 1798, by one McCann, 'lawfully authorized to survey such claims.'
 This title of Jarrot, thus confirmed, became afterwards vested in one Felps.
 But an opposing title also came into existence. On the 20th of February, 1812, an act of Congress was passed, authorizing a board of commissioners to revise and reexamine the confirmations made by the governor of the Northwestern Territory; and the board, in pursuance of the act, made such a report to the government of the United States, that the government by its proper officers rejected this claim, and subsequently exposed the land previously confirmed to Jarrot to public sale, when a certain Reichart became the purchaser. Two patents were accordingly issued to him by the United States, one in 1838 and one in 1853.
 Reichart, asserting the title conferred by these patents, now brought ejectment in a State court of Illinois against Felps, relying on his old French claim confirmed by Governor St. Clair.
 The plaintiff having given his patents of 1838 and 1853 in evidence, the defendant on his part offered the survey of McCann, and a certified copy from the records of the instrument of confirmation given by Governor St. Clair. On this certified copy no evidence appeared of a seal having ever been on the original; though there was oral testimony tending to show that the original did have a seal in wax, with an emblem and letters.
 The plaintiff objected to the survey, and to the copy of the instrument from Governor St. Clair, because it showed that the original had no seal.
 The court overruled the exception, and gave judgment for the defendant, so deciding against the validity of the patents of the United States issued in 1838 and 1853; though deciding in effect in favor of the validity of the instrument of confirmation professing to be done under authority of Congress. The judgment having been affirmed in the Supreme Court of Illinois,[1] th case was brought here under the 25th section of the Judiciary Act of 1789, giving a right to the court to re-examine the final judgments of the highest State courts, 'where is drawn in question the validity of a statute or of an authority exercised under the United States, and the decision is against their validity.' Mr. Baker, for the plaintiff in error; a brief being filed for Mr. koerner:
 The deed of cession, of 1784, put the title into the United States. There was no tract of which possession did not vest in the United States. No power was given by any act of Congress to the governors of the Northwestern Territory to issue patents or deeds of confirmation. Moreover, whatever confirmations those governors did issue, were not considered final either by the Executive or by Congress. The copy of the patent shows that no seal was ever affixed to the instrument of confirmation. The instrument was, therefore, never executed, and is void. Oral testimony cannot countervail the better evidence of the copy.
 
 Mr. Lyman Trumbull, contra:
 
 The validity of the confirmation or grant of Governor St. Clair was brought before the Supreme Court of Illinois in 1829, in an ejectment by one Hill, who had entered and obtained a patent for a portion of the premises as public land. The court held the governor's confirmation valid.[2] After this decision, the United States, recognizing it as establishing the validity of the grant by Governor St. Clair, passed an act, August 11th, 1842, refunding the money paid by the patentee who had entered it as public land.[3]
 This history of the government's dealing with the land in controversy, shows that it was reserved from the beginning from the public lands which were to be sold, and that the government never intended it should be sold as public land.
 The patent issued by Governor St. Clair in 1799, devested the United States of any claim it might have had to the land, and its subsequent sale as public land was therefore void. It is assumed by the plaintiff that no authority was given to the governor of the Northwestern Territory to make confirmations or grants of these ancient possessions and titles. But the act of June 20th, 1788, affords an answer to this assumption; where it instructs the governor of the Northwestern Territory to 'examine the titles and possessions of the settlers, in order to determine what quantity of land they may severally claim, which shall be laid off for them at their own expense.' Who was to determine the quantity of land the claimants were to have, and to lay it off for them at their own expense, except he whose duty it was to examine the title and possessions for that purpose? When this was done, and the land laid off as the law declared it should be, the United States gave up all claim, if it ever had any, to the land thus set off. No other evidence of this would have been necessary than the survey which was made and entered upon the Land Office records; and the fact that the governor thought proper to evidence the claimant's right by a more solemn instrument, in the shape of a patent, is only confirmatory of what would have been a good title without it. All that was necessary to be done was to separate the private claims from the other lands, so that the latter might be brought into market. The United States never pretended to make claim to the lands set off to private claimants; on the contrary, it has, by numerous acts, as shown in the history of this case, recognized them as valid. The governors exercised this power of confirmation for more than twenty years, and their confirmations are styled patents in acts of Congress.[4]
 A grant, or a concession, made by that officer who is by law authorized to make it, carries with it prima facie evidence that it is within his power. No excess of or departure from them is to be presumed.[5]
 The land having been thus previously granted, reserved from sale, or appropriated, the patents of 1838 and 1853 are void.[6]
 The objections taken below as to the want of seal, &c., it is submitted, need no reply here.[7] The original patent, it is testified, had a seal. None, however, was necessary.
 Mr. Justice GRIER delivered the opinion of the court.
 
 
 1
 The patents under which the plaintiff claimed in the State court were declared by that court to be void. The case, therefore, is properly cognizable in this court under the twenty-fifth section of the Judiciary Act of 1789.
 
 
 2
 He claimed under two patents of the dates of 1838 and 1853, which exhibit conclusive evidence of title if the land claimed had 'not been previously granted, reserved from sale, or appropriated.' The only question to be decided in this case is, whether the land had been so granted, reserved, or appropriated.
 
 
 3
 The patent of Governor St. Clair, February 12th, 1799, duly registered in 1804, with the survey of McCann, April 10th, 1798, are conclusive evidence that the land in question was reserved from sale. The case of Moore v. Hill,[8] decided nearly forty years ago in the Supreme Court of Illinois, on the same survey and grant which is now before us, should have been conclusive against the objections which have been revived on the present writ of error. 'This very able and elaborate opinion received the concurrence of the bar and the country at the time it was delivered, and has never been called in question since. There is no fact in the present case calculated to produce a result different from the one there announced.'[9]
 
 
 4
 The objection that the patent from the governor was without a seal ought not to have been made. The act of Congress giving power to the governor did not require him to issue a patent nor to execute an instrument under seal. Any written evidence of his confirmation would have been a sufficient execution of the power. All that was necessary was an authentic declaration by the United States, through their authorized agent, that they had no claim to the land. It was not a grant by the United States, because the title was not in them.
 
 
 5
 Congress is bound to regard the public treaties, and it had no power to organize a board of revision to nullify titles confirmed many years before by the authorized agents of the government. And Congress became afterwards so well satisfied itself of this that it passed an act restoring to the purchasers the money which they had paid for titles obtained on the assumption of such a right.
 
 JUDGMENT AFFIRMED
 
 
 [1]
 Reichart v. Felps, 33 Illinois, 433.
 
 
 [2]
 Doe ex dem. Moore and others v. Hill, Breese, 236.
 
 
 [3]
 6 Stat. at Large, 860?
 
 
 [4]
 Act of April 21, 1806. Pub. Land Laws, &c., part 1, 143.
 
 
 [5]
 Delassus v. United States, 9 Peters, 134.
 
 
 [6]
 Stoddard v. Chambers, 2 Howard, 317.
 
 
 [7]
 See what is said in Reichart v. Felps, the case below, 33 Illinois, 439.
 
 
 [8]
 Breese, 236.
 
 
 [9]
 Reichart v. Felps, 33 Illinois, 439, A. D. 1864, per Breese, J., who reported the case A. D. 1829.