The opinion of the court was delivered by
Brewer, J.:

i. Bes juaicata'

This case is now before us on the motion to strike out that portion of the answer which sets up a judgment of the circuit court of the United States for the district of Kansas as a defense to this application. The application is for a mandamus on the commissioners and clerk of Jefferson county to compel them to- issue the bonds of the county to the plaintiff. The alternative writ alleges a vote of the people, a subscription, and a compliance by the plaintiff with the terms of the subscription. The portion of the answer objected to sets up a decree of the circuit court enjoining the commissioners and their successors in office from issuing these bonds. Is it a bar ? The suit as originally brought in the U. S. circuit court was between G. W. Norton and others as plaintiffs, and the board of county commissioners of Jefferson county, the three commissioners, and the county clerk, and this plaintiff, and another railroad company as defendants, and was to restrain the issue of these bonds. When the case was called for trial, a new board of county commissioners having in the mean time been elected, the demurrer of the board was withdrawn, the action dismissed as to the two railroad companies, and a decree pro oonfesso entered against the commissioners and the county. The dismissal was, as stated in the order, “without prejudice to the rights of said companies, or either of them,” and the decree itself recites that “this decree is not to prejudice the right of the said railroad companies, or either of them, in any respect, but is to be held, construed, and treated as if made in a suit to which said companies were not parties.” It needs no argument to show that this decree does not bar the plaintiff, or constitute any defense to this action, on the ground of res judicata. “ In order to make a matter res judicata there must be a concurrence of the four conditions following, namely: 1st, identity in the thing sued for; 2d, *136 identity of the cause of action; 3d, identity of persons, and of parties to the action; 4th, identity of the quality in the persons for or against whom the claim is made.” 2 Bouv. Law Dic., title, “Res Judicata;” Benz v. Hines, 3 Kas., 397. That there should be “identity of persons, and of parties to the action,” is a necessary consequence of the rule of natural justice. Ne inauditus condemnetwr. The plaintiff here was not a party to that decree; neither does it claim under any one who was such party. And in order to guard against any possible misconception, the decree especially affirms that it is without prejudice to the rights of the plaintiff. Of course, to say that a decree rendered pro confesso in an action between two parties, both of whose interests are adverse to the plaintiff’s, concludes this plaintiff, and bars its rights, is absurd.

„ „ , aeSnce of bonds.

3 Discretion of court.

But it is insisted that whatever rights the plaintiff may have, must be enforced in a different action; that no mandamus will ever issue to' command the doing of an act which is forbidden to be done by a valid injunction order of a competent court, because thus the party would be placed between two fires, and liable to punishment for contempt in either event. It is said that the writ of mandamus lies within the discretion of the court, and that the mere fact that a party has rights will not necessarily entitle him to the writ; that no court will exercise this discretion in such manner as to place the defendant in jeopardy of punishment. That this writ, originally a prerogative writ, and solely a matter of discretion, still partakes or}ginai nature so far that it yet remains largely within the discretion of the court, cannot be doubted: The State, ex rel., Wells, v. Marston, 6 Kas., 525. But in the exercise of that discretion regard must be had to the rights of ¿he plaintiff, as well as to the dangers of the defendant. If those rights can be secured only through this writ, it would be simply an abuse of discretion to refuse it. If the plaintiff has any rights, the law guarantees to it a time, and place, and tribunal to enforce them. Those rights cannot be destroyed by a decree to which it is neither party nor privy.
*137 It becomes necessary therefore to inquire into the matter of the plaintiff’s claim, and how rights like those it asserts can be enforced. This is an extraordinary remedy it is pursuing. The statute declares that “this writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law.” Code, § 689; and to the same effect are all the authorities. Equity will not interfere when the law is potent to give relief. And in an equally emphatic sense is it true, that mandamus will not lie when relief can be obtained in the ordinary proceedings. The plaintiff asserts a subscription by the county of Jefferson to its capital stock, and a compliance by it with the terms of the subscription, and demands the bonds of the county, as promised by its subscription. Now, the remedy usually pursued in such cases is the one pursued by plaintiff, that is, to apply for a mandamus. And the right to this remedy has been uniformly sustained: Moses on Mandamus, 102; C.W.& Z. Rld. Co. v. Comm’rs Clinton Co., 1 Ohio St., 77; The People v. Mitchell, 35 N. Y., 551; Commonwealth v. Comm’rs Allegheny Co., 32 Penn. St., 223. And as mandamus will not lie where there is a plain and adequate remedy in the ordinary proceeding of the law, it follows that in the judgment of these tribunals,, at least, the ordinary remedies o'f law are insufficient for a proper enforcement of the rights claimed. And indeed it is difficult to see by what proceeding other than mandamus the bonds themselves could be obtained. Counsel for defendants suggest two remedies which the plaintiff might have pursued other than mandamus one a ¡proceeding in equity to obtain a decree for a specific performance, and the appointment of a commissioner to sign the bonds for the county, and the other an action at law on the contract of subscription for the amount of the subscription. It would not be difficult, we think, to demonstrate the inadequacy of these remedies, even if their legality were beyond question. Nor, if both legal and adequate, would they avoid the difficulty; they only postpone it. For bonds, when issued, are taken with the expectation of payment. A judgment is but one step in a proceeding to *138 enforce payment. But as execution will not run against a county, payment, whether voluntary or enforced, can only be by a tax, and the levy of a tax can be compelled only by mandamus. Now the injunction decree in terms forbids not merely the issue of bonds, but also the “levying any tax on account of any pretended subscription to said railroad company.” Hence, all proceedings to secure the rights claimed by plaintiff must contemplate a voluntary or enforced disobedience of the letter of the decree, and the enforced disobedience secured only by mandamus. If it be suggested that the plaintiff might apply to the circuit court to be made a party to that suit and for a modification of that decree, we reply that it was a party; that it in vain objected to being dismissed out of the case — the court (in the language of the decree itself) “allowing said dismissal to be made without pi’ejudice to the rights of said companies, or either of them.” It seems to us therefore that this decree does not in any way cut off the rights of the plaintiff; and as a full judicial enforcement of these rights requires, first or last, the writ .of mandamus, it should be permitted to pursue in the first place the remedy usually resorted to in like -cases. But it may be said that such ruling opens the way to a conflict between the state and United States courts; that the mandamus cannot be obeyed without a disobedience of the injunction, and viceversa; that each court will be constrained to enforce obedience to its commands, and hence will be collision. We have the high authority of the supreme court of the United States to the contrary: Riggs v. Johnson Co., 6 Wall., 160; Weber v. Lee Co., id., 210; U. S., ex rel., v. Council of Keokuk, id., 514. In those cases the same questions arise as are in this, though the position of the courts was different, the state court having issued the injunction, and the application for the mandamus being made to the federal courts. The injunction forbade the commissioners to levy any tax for the payment of certain bonds, the bondholders not being parties to the action. .They sued in the federal courts, obtained judgment, and then applied for a writ of mandamus commanding the commissioners to *139 levy the tax, which was awarded them fey the supreme court of the United States, notwithstanding the existing injunctions. It is worth while also to notice the subsequent action of the state courts. As a consequence of these decisions of the supreme court writs of mandamus were issued in quite a number of bond cases. In one of them, the commissioners, resting on the injunction, disobeyed the mandamus. An attachment was ordered for contempt, and the commissioners arrested. A habeas corpus was issued by one of the justices of the supreme court of the state, who ordered the discharge of the commissioners, but on appeal the supreme court reversed this order and remanded the commissioners to the custody of the marshal: Ex parte Holman, 28 Iowa, 88. The Iowa Chief Justice who delivered the leading opinion in the case just cited was the judge of the United States circuit court who made the decree we are now considering. In that opinion he says: “It is a fundamental, vital principle of the law, that no man can be affected by any judicial proceeding to which he is not a party. No person can be concluded unless he has had a day in court. The law, before it -decides against any man, or any man’s rights, gives him an opportunity to be heard. I do not say that the bondholders are absolutely necessary parties to. such a suit; but I do hold that if not parties, they are not bound, and the proceedings and decree are, as to them, res inter alios acta” The evident pains, taken to so word the decree that no one could possibly suppose that the rights of the present plaintiff were affected by it, may be owing in no small degree to the case of Ex parte Holman.
The motion to strike out must be sustained.
All the Justices concurring.