UNITED STATES *v.* DALLES MILITARY ROAD Co. *et al.*

*(Circuit Court, D. Oregon.* February 20, 1890.)

LAND GRANTS—MILITARY ROADS—COMPLETION—BONA FIDE PURCHASERS—ESTOPPEL.

In 1867 there was granted the state of Oregon, by an act of congress, certain public lands to aid in the construction of a military wagon road. The grant was in the words, "there be and hereby is granted to the state of Oregon," and it was provided that the lands granted should be disposed of by the legislature for the purposes of the grant. It was further provided that when the governor of the state should certify to the secretary of the interior that 10 continuous miles of the aided road are completed, a quantity of the lands granted, not exceeding 30 sections, might be sold, and so on from time to time until the road should be completed. The governor of Oregon having thereafter certified to the completion of said road, the commissioner of the general land office withdrew from sale the lands granted, in favor of the defendant company, to which the grant had been transferred by act of the state legislature, and afterwards, in 1874, congress by an act provided "that in all cases when the roads in aid of the construction of which said lands were granted, are shown by the certificate of the governor of the state of Oregon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the state of Oregon as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall, by public acts, have transferred its interests in said lands to any corporation or corporations, in which case patents shall issue from the general land-office to such corporation or corporations upon payment of the necessary expenses thereof." *Held:* (1) The act granting lands in aid of the Dalles military road passed a present title to the state of Oregon, to be defeated only by a breach of conditions subsequent. (2) The fact that the governor's certificate was not made on completion of each section of ten miles of the road, makes no difference. It is sufficient if made at one time covering the completion of the whole road. (3) The authority to determine whether the road was completed was vested solely in the governor of Oregon, whose decision, in the absence of any such fraud as would vitiate it, is necessarily final and conclusive. (4) The right to a patent once vested, is equivalent, as respects the government dealing with the public lands, to a patent issued. (5) Purchasers of these lands from the state's grantee, were not required to go over the road and ascertain for themselves whether it had been completed in all particulars in accordance with the requirements of the granting act, but were entitled to rely upon the record, constituted by the said acts of congress and of the state, the withdrawal of the lands by the commissioner, and the governor's certificate. (6) The provision of the act of congress authorizing the bringing of this suit by the United States to procure a decree of forfeiture of said lands, "saving and preserving the rights of *bona fide* purchasers of either of said grants, or of any portion of said grants, for a valuable consideration," recognizes the rights of innocent purchasers, if they had been otherwise doubtful. (7) Where 15 years have elapsed after affirmative and confirmatory action by congress in directing the issue of patents to lands in all cases where the certificate of the governor had been made, and 20 years have elapsed after the date of such certificates, and before the act authorizing the bringing of this suit, it is not within the established principles of equity jurisprudence to allow such suit to be maintained, and the cause of suit ought to be regarded as stale. (8) The government is now estopped by the action had from time to time by congress and its agents duly authorized, and the public record made of such acts, from alleging the non-fulfilment of the statutory conditions of the grant.

*(Syllabus by the Court.)*

This is a bill in equity, filed by the attorney general of the United States, in pursuance of the act of congress of March 2, 1889, (25 St. 850,) to procure a decree of forfeiture of all lands granted by the act of congress of February 25, 1867, to the state of Oregon, to aid in the construction of a military wagon road from Dalles City, on the Columbia, to Fort Boise, on the Snake river, found in 14 St. 409, on the ground that the terms of the grant had not been complied with. It also seeks a cancellation of all patents therefor, issued by the United States under the act, and all conveyances to purchasers under said patents, and un-

der the act, as well as a forfeiture of the lands still unpatented. The bill alleges, in substance, that the road, in aid of which the grant was made, was never constructed in whole, or in part; that through the fraudulent representations of the officers, stockholders, and agents of the corporation, the governor of Oregon was deceived and induced to issue a certificate in pursuance of the provisions of the act, declaring that he had examined the road throughout its entire length, and that it had been constructed and completed in all respects in accordance with the statute; and that, relying upon this certificate, the patents to portions of the lands had been issued by the United States. The state of Oregon, by an act passed October 20, 1868, granted the same lands to the defendant, the Dalles Military Road Company, for the same purpose and upon the same terms as prescribed in said act of congress. St. Or. 1868, 3. After the road was claimed to have been completed in accordance with the provisions of said several acts, and after the governor of Oregon had certified to the completion, as provided in the acts, and the road had been accepted, and patents to portions of the lands issued, the said Dalles Military Road Company conveyed the lands for a large consideration, to one Edward Martin, and by sundry mesne conveyances from him, the title became vested in the defendant, the Eastern Oregon Land Company. The defendants, by leave of the court first obtained, filed two pleas, to the bill, supported by an answer under oath, denying the fraud alleged in the unverified bill as prescribed by Equity Rule 32. The first alleges:

"That George L. Woods, then the governor of Oregon, without any false or fraudulent representations having at any time been made to him by the officers, stockholders, or agents of the Dalles Military Road Company, or any other person, or persons in its or their interest, and without any one or more of them having falsely or fraudulently induced him to certify that the road of said company was constructed in accordance with law; and without any fraud whatever on his part, on January 23, 1869, made a certificate, which certificate is in the words following: 'I, George L. Woods, governor of the state of Oregon, do hereby certify that this plat or map of the Dalles Military Road has been duly filed in my office by the Dalles Military Road Company, and shows in connection with the public surveys, as far as said public surveys are completed, the location of the line of route as actually surveyed, and upon which their road is constructed in accordance with the requirements of an act of congress approved February 25, 1867, entitled 'An act granting lands to the state of Oregon, to aid in the construction of a Military Wagon Road from Dalles City, on the Columbia river, to Fort Boise, on Snake river,' and with the act of the legislative assembly of the state of Oregon, approved October 20, 1868, entitled 'An act donating certain lands to Dalles Military Road Company.' I further certify that I have made a careful examination of said road since its completion, and that the same is built in all respects as required by said above recited acts, and that said road is accepted;' that afterwards, on May 31, 1876, the Dalles Military Road Company, for a valuable consideration, to-wit: the sum of $125,000, to it paid by Edward Martin, sold and conveyed all the said lands belonging to it to said Martin, his heirs, and assigns,. and that by sundry mesne conveyances from said Martin, to the Eastern Oregon Land Company, one of the defendants, the title to all said lands became and now is vested in said defendant, the Eastern Oregon Land Company.",

The second plea sets out the same facts, as stated in the first, and the further facts that on December 18, 1869, after making of said certificate by the governor of Oregon, the commissioner of the general land-office withdrew from sale the odd numbered sections within three miles on each side of the said road in favor of the Dalles Military Road Company; that congress afterwards, on June 18, 1874, passed an act entitled "An act to authorize the issuance of patents for lands granted to the state of Oregon in certain cases," which after reciting that congress had granted the state of Oregon certain lands, "to aid in the construction of certain military wagon roads in said state," and that "there exists no law providing for issuing formal patents for said lands,"—provided "That in all cases when the roads in aid of the construction of which said lands were granted, *are shown by the certificate of the governor of the state of Oregon*, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form, to the state of Oregon, as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall, by public acts, have transferred its interests in said lands to any corporation or corporations, in which case patents shall issue from the general land-office to such corporation, or corporations, upon payment of the necessary expenses thereof, Provided: that this shall not be construed to revive any land grant already expired, nor to create any new rights of any kind, except to provide for issuing patents for land to which the state is already entitled;" that Edward Martin a resident of the state of California, placing confidence in the truth of the said certificate of the governor of Oregon, dated June 23, 1869, that the said road had been duly constructed, according to the requirements of said act of congress, approved February 25, 1867, and placing confidence in the order of the commissioner of the general land-office, dated December 28, 1869, withdrawing said lands from sale in favor of the Dalles Military Road Company, and believing that said act of congress approved June 18, 1874, would be carried into effect by the issue of patents to the Dalles Military Road Company for all of said lands, did, on the 31st day of May, 1876, purchase in good faith, for a valuable consideration, to-wit: the sum of $125,000 then paid by the said Martin to said Dalles Military Road Company, except such portions of it as had been previously sold by it; that previous to the time of paying said sum of $125,000, purchase money, and receiving said deed, the said Edward Martin had no notice of any failure on the part of the Dalles Military Road Company, to construct and complete the said road, in accordance with the requirements of said act of congress, approved February 25, 1867, and had no reason to believe that the same was not constructed in accordance with the said act of congress, but on the contrary, he was informed and believed that said road had been so constructed, with width, gradation, and bridges, as to permit of its regular use as a wagon road; that thereupon said Martin, became and was the *bona fide* purchaser of all said lands for a valuable consideration, and they were duly conveyed to him by said corporation; and that by mesne conveyances all of said lands have been conveyed to

defendant, the Eastern Oregon Land Company, with like good faith, and for a valuable consideration, and they are now held by said defendant, the Eastern Oregon Land Company. For hearing on exceptions to portions of bill for impertinence, see 40 Fed. Rep. 114.

*L. L. McArthur*, U. S. Atty., for complainant.

*James K. Kelley* and *Dolph, Bellinger, Mallory & Simon*, for defendants.

Before SAWYER, Circuit Judge.

SAWYER, J., (*after stating the facts as hereinbefore set out.*) The pleas having been set down for argument by the complainant, for insufficiency, all the material allegations must be taken as true for the purposes of this decision. In my opinion, both pleas are good. The provisions of the act of congress making the grant, are as follows:

"That there be, and hereby is granted to the state of Oregon to aid in the construction of a military wagon road * * * alternate sections of public lands, designated by odd numbers, to the extent of three sections in width on each side of said roads." Section 1.

Section 2 provides—

"That the lands hereby granted to said state shall be disposed of by the legislature thereof for the purpose aforesaid, and for no other."

Section 5 provides—

"That *when the governor of said state shall certify to the secretary of the interior that ten continuous miles of said road are completed, then a quantity of the land hereby granted, not to exceed thirty sections, may be sold:* and so on from time to time until said road shall be completed."

The state of Oregon, by an act passed October 20, 1868, granted the lands so granted to the state, to the Dalles Military Road Company, upon the same conditions as in the grant to the state, the act of congress being recited *verbatim*, in full, in the preamble to the act of the state.

The grant to the state, by the words "there be and hereby is granted to the state of Oregon," was a grant, *in præsenti*, passing a present title to the state, to be defeated only by breach of conditions subsequent, as has been repeatedly held by the supreme court of the United States. *Schulenberg* v. *Harriman*, 21 Wall. 44; *Leavenworth, L. & G. R. Co.* v. *U. S.*, 92 U. S. 741; *Missouri, K. & T. R. Co.* v. *Kansas Pac. Ry. Co.*, 97 U. S. 491; *Wright* v. *Roseberry*, 121 U. S. 500, 7 Sup. Ct. Rep. 985; *Van Wyck* v. *Knevals*, 106 U. S. 360, 1 Sup. Ct. Rep. 336; *Railroad Co.* v. *Orton*, 6 Sawy. 198; *Francoeur* v. *Newhouse*, 40 Fed. Rep. 618. The state act in like terms passed the present title subject only to be defeated by breach of condition subsequent, to the Dalles Military Wagon Road Company. The act of congress, also, designated the party, officer, or tribunal that should finally determine the question of fact, whether the road had been completed in accordance with the provisions of the statutory grant. Thirty sections were authorized to be sold, "when the governor of said state shall certify to the secretary of the interior, that any ten continuous miles of said road are completed, and so on from time to time, until said road is completed." None appears to have been sold until the whole road was certified by the governor of Oregon, who alone was des-

ignated and authorized by the act of congress to finally determine the matter, to have been fully completed in accordance with the requisites of the congressional grant. That the certificate was not made on completion of each section of 10 miles of the road can make no difference. It is sufficient that it was made at one time, covering the completion of the whole road. The making of the certificate, on the completion of each 10 miles, was authorized for the convenience, and benefit of the grantee, and not of the United States. The intent of the government was to obtain the completion of the whole road. And that being completed, its object was fully attained. The authority to determine whether the road was completed was vested solely in the governor of Oregon, from whose decision there was no appeal. He was the agent of the United States with full authority to determine the question. And his certificate of completion was to be the evidence, and the only evidence under the provisions of the statute, that the corporation has fully performed its part of the contract. His decision therefore, in the absence of any such fraud as would vitiate it, is, necessarily, final, and conclusive; and the government is estopped from denying its finality. This principle was established in *Reichart* v. *Felps*, 6 Wall. 160, and *U. S.* v. *Speed*, 8 Wall. 83. When a special tribunal is authorized to hear and determine certain matters arising in the course of its duties, its decisions within the scope of its authority are conclusive. *Johnson* v. *Towsley*, 13 Wall. 72. And the same principle has been announced in numerous cases since. The right to a patent once vested is equivalent, as respects the government dealing with the public lands, to a patent issued. *Stark* v. *Starrs*, 6 Wall. 402. Now in this case the acts of congress and of the state of Oregon, and the certificate of the governor are public records, and the certificate of the governor having been made that the road had been fully completed in all respects as required by the granting act, the title already vested by the grant *in præsenti* became perfected and indefeasible upon the record in the absence of any such fraud as would defeat it. The verified plea supported by the answer, avers that the certificate *was made without fraud*. The plea is, therefore, sufficient, and must be sustained.

The second plea in addition to the matter stated in the first, alleges that the defendants are *bona fide* purchasers from the Dalles Military Wagon Road Company, without notice of any fraud, or defect in the title, and, that, there can be no forfeiture as against them. In *Iron Co.* v. *U. S.*, a bill was filed to vacate several patents as having been obtained by fraud and perjury, in cases wherein there had, in fact, been no actual settlement, or improvement on the land, although the evidence showed that there had been, it was held that the defense of a *bona fide* purchaser, without notice, is perfect. 123 U. S. 307, 8 Sup. Ct. Rep. 131. It was also held, that, the burden of, satisfactorily, showing the fraud, is on the complainant. So, in *U. S.* v. *Minor*, 12 Sawy. 164, 29 Fed. Rep. 134, it was held, that, a purchaser of land, in good faith, for a valuable consideration, from a patentee of the United States, without notice, of any fraud affecting the title, is entitled to rely upon the record; and that

a patent, if valid upon its face, will not be vacated as to him, for matters *dehors the record* of which he has no knowledge. Said the court:

"The patent, which is the final record of the title, (*Beard* v. *Federy*, 3 Wall. 491, 492,) was regular and valid on its face. The proper department of the government had examined the case on the evidence presented, adjudged the right to be in Minor, and issued the patent, accordingly, in due form. The patent could only be assailed by matter resting in parol *dehors* the record. Innocent parties were entitled to rely upon the record." 12 Sawy. 167, 29 Fed. Rep. 136.

These observations are equally applicable to the present case. The two statutes, one of the United States, and the other of Oregon, the certificate of the governor of Oregon, made in pursuance of the first named statute, the act of 1874 authorizing the issue of the patents upon the governor's certificate, as to the unpatented lands and these, together with the withdrawal of the lands from sale by the secretary and the patents so issued, as to all the lands patented, constitute the record, and upon this record purchasers were entitled to rely. The claim that purchasers could not rely upon this record, but that they must go over the road, and, at their peril, ascertain, for themselves, whether it had been completed in all parts in pursuance of the provisions of the statutory grant, is preposterous. The record shows upon its face that all conditions have been performed; that this has been so adjudged by the officer authorized to determine the fact, and the correctness of this determination is recognized by congress in the act of 1874 directing patents to issue upon the certificates; and on that record the parties were entitled to rely. While innocent purchasers are thus protected upon undisputed equitable principles, and authority, their rights, are, also, expressly recognized and affirmed by the statute, itself, under which this suit is brought, which provides, that the courts shall determine the questions, which they are authorized to consider in a manner "saving and preserving the rights of all *bona fide* purchasers of either of said grants, or of any portion of said grants, for a valuable consideration." 25 U. S. St. 851. Thus the statute itself, recognizes the rights of innocent purchasers, if they had been otherwise doubtful. It is plain, therefore, that the second plea is sufficient, and must be sustained.

The remaining question to be considered, and the only one presented, upon which there is any room for doubt, is, whether complainants should be permitted to reply to the pleas, or whether the bill should be dismissed? Upon the whole, after careful consideration, I think the bill should be dismissed. I think it in the highest degree probable that such would be the final result, whichever course is pursued. If so, the expense and annoyance of a long litigation would be fruitless. The governor of Oregon, upon whom alone, was devolved the jurisdiction and duty to, finally, determine the fact as to the completion of the road, made his certificate on June 23, 1869, and, thereby, furnished record evidence of the complete, and proper performance of all the conditions of the statutory grant, and, that, the title to the lands granted had become perfect, and indefeasible. He certifies, that, he makes the certificate after, and

upon, a *careful personal examination of the road, since its completion.* Certainly, the public, and subsequent purchasers, were entitled to rely upon this careful, positive certificate of the party authorized, chosen, and designated to determine and certify the fact of completion. Five years afterwards, on June 18, 1874, without any proceedings having been taken to declare a forfeiture of the grant for breach of conditions subsequent, and without any complaint appearing to have been made, that said certificate of the governor was false, or that said road had not been fully completed, in all particulars, as was required by the granting act, and, while the government must have been, all the time, using the road for its various purposes designated in the act, congress passed another "act to authorize the issuance of patents for lands granted to the state of Oregon in certain cases," wherein, after reciting, that "certain lands have heretofore by acts of congress been granted to the state of Oregon, to aid in the construction of certain military wagon roads in said state," it was provided—

"That *in all cases* when the roads, in aid of the construction of which said lands were granted, *are shown by the certificate of the governor of the state of Oregon, as in said acts provided, to have been constructed and completed,* patents for said lands *shall issue in due form* to the state of Oregon, as fast as the same shall, under said grants be selected and certified, *unless the state of Oregon shall by public act have transferred its interests in said lands, to any corporation, or corporations, in which case the patents shall issue from the general land-office to such corporation, or corporations,* upon their payment of the necessary expenses thereof: Provided that this shall not be construed to revive any land grant already expired, nor to create any new rights of any kind, except to provide for issuing patents for lands to which the state is already entitled." 18 St. 80.

The state in this case had so transferred its interest to the Dalles Military Road Company. By this act, congress directed that patents shall issue, "*in all cases,*" not, *when the roads have, actually, in fact, been completed as required by law,—but "in all cases," when "the roads"* \* \* \* "*are shown by the certificate of the governor of the state of Oregon as in said acts provided, to have been constructed and completed.*" Now, in this case, after waiting five years after the certificate of completion, made upon personal examination by the governor, having all the means of ascertaining whether it was false or true, congress, positively, in effect, *affirmed its truth,* by this provision of the act. It determined the fact of the performance of the conditions of the grant by directing in terms, patents to be issued "*in all cases*" *when the certificate had been issued.* This provision is not permissive merely, but mandatory. The closing paragraph in the proviso would operate only upon any lapsed grant if any there was, by failure to complete in the required time, or when the work was not all completed, and when no certificate had been issued, or when certificates for only a part had been made. But it, necessarily, recognizes, that, "in all cases" when the certificate of the governor had been issued, the conditions have been performed, and the grantee has become entitled to a patent. The statute in effect, confirms, by legislative act, the judicial act of the governor, in ascertaining and certifying the completion of the work. I know of no case, where a legislative grant, or act, has been

investigated, and set aside, by the courts, on the ground that its passage had been secured by imposition or fraud, upon the legislative body passing the law. In *Tameling* v. *Emigration Co.*, 93 U. S. 644, it was held that the action of congress confirming a private land claim in New Mexico is not subject to judicial review. In the present case, the road must, necessarily, have been used by the government during these many years for those purposes, which were of so urgent a character, as to induce congress to make the grant in aid of its construction, or else the failure to complete it, in such manner, that it could be so used, must, inevitably, have come to the knowledge of the government and congress. With this knowledge, necessarily, had, the act of 1874, was deliberately passed. Congress exercised its discretion upon such information as it had, in requiring the issue of the patents upon these certificates of the governor, and that is the end of the matter. It is a legislative recognition and affirmation of the correctness of the certificate of the governor of Oregon. See, also, *Ryan* v. *Carter*, 93 U. S. 78.

It seems to me, also, that the cause of suit ought to be regarded as stale, so as to render it inequitable, under the circumstances of the case, to prosecute it now within the established principles of equity jurisprudence. Fifteen years elapsed after the affirmative and confirmatory action of congress in directing, in mandatory language, the issue of the patents to lands "in all cases" when the certificate of the governor had been made, and 20 years after the date of the certificates now claimed to have been fraudulently issued, had elapsed before the passage of the act authorizing the bringing of this suit. It is a well-known historical fact familiar to every citizen of Oregon, that the governor himself who made the certificate in this case, and the governors, who made them in the following case, are both dead, as well, doubtless, as many of the other parties to the transactions. At this day, it would, doubtless, be difficult to establish by sufficient affirmative testimony, any actual fraud, if any there was. Although statutes of limitations do not run against the United States, and would not be available in an action at law, it seems to me, that the case is a proper one for the application of the principle that it would be inequitable to enforce a stale claim, and that a court of equity would not on that ground, now declare a forfeiture. Had the land grant been made for the same purposes, and upon the same conditions, by a private citizen, and the subsequent action both of the grantee and grantor been precisely the same as in this case, there can be little doubt, I apprehend, that a court of equity, in view of all the circumstances would, at this late day, refuse to decree a forfeiture, and to restore the lands to the grantor for breach of the conditions subsequent, on the ground that it would be inequitable to enforce so stale a claim against parties who had subsequently purchased, in full view of the affirmative public action, as well as the non-action of the grantor, and thereby had good reason to suppose, that all the conditions of the grant whether in fact well performed, or not, had been satisfactorily performed. *Bowman* v. *Wathen*, 1 How. 189; *Piatt* v. *Vattier*, 9 Pet. 416; *Badger* v. *Badger*, 2 Wall. 93; *Sullivan* v. *Railroad Co.*, 94 U. S. 811; *Clarke*

v. *Boorman's Ex'rs*, 18 Wall. 509. Whatever is inequitable, as between man and man, in their dealings with each other, should, also, be deemed inequitable, as between the United States, and those with whom they condescend to deal, under like circumstances; and, I take it, that the same decree is proper in this case, that would have been proper, had a private party been the grantor, and had he by both his positive affirmative action, and his non-action, for so long a time, given purchasers from his grantee so good reason to believe, that he was fully satisfied with the performance of the conditions of the grant.

In my judgment, all subsequent purchasers were entitled to rely, implicitly, upon the certificate of the governor, who was alone authorized to determine the fact of the completion of the road, and, especailly, after its confirmation by congress in the act, peremptorily requiring patents to issue in all cases where certificates had been, in fact, issued. *If there were suspicious circumstances before the passage of this act, which purchasers might be called upon to notice, the passage of this act, assured them that congress had informed itself of the action of the state, and its grantees under it, and was satisfied as to the full performance of the work, or, at least, if it found any defects or shortcomings, that they were waived, and the work accepted.* Martin purchased of the Dalles Company two years after the passage of the act of 1874, and was therefore, a subsequent purchaser. Subsequent purchasers, certainly, had a right to rely upon the action had from time to time by congress, and its agents duly authorized, and the public record of it so made. It is now estopped from alleging the non-fulfillment of the statutory conditions of the grant. Let the bill be dismissed.