THE STATE OF NEBRASKA, EX REL. GEORGE B. CHANDLER, v. THE BOARD OF COUNTY COMMISSIONERS OF DODGE COUNTY.

1. **Precincts:** THEIR CHARACTER AND POWERS. In this state precincts are just what and no more than the word, as ordinarily understood, imports. They are mere territorial divisions or districts created for certain political and administrative purposes, and without the semblance of corporate character. They can neither plead nor be impleaded in actions, nor are they capable of imposing upon themselves any obligation or liability, except in pursuance of express legislative authority.

2. **Precinct Bonds:** MODE OF COLLECTION. The statute provides for the payment of precinct bonds issued to aid works of internal improvement by means of special taxes to be levied and collected on all the taxable property in the precinct. In case of the failure or refusal of the proper officers to levy the necessary taxes and make payment to the holders of such bonds, it is provided that they may be compelled by mandamus to do so. And this is the appropriate remedy.

The State v. Dodge County.

3. ———: ———. The holder of such bonds, on which certain interest coupons had fallen due, brought an action at law thereon in the circuit court of the United States for the district of Nebraska, against the board of county commissioners of Dodge County, and obtained a judgment for the amount of the matured interest and costs. On this judgment an application is made to this court for a writ of mandamus to compel the commissioners of said county to levy the necessary taxes upon the property of the precinct to pay said judgment. *Held,* That said judgment is an absolute nullity, and no foundation for the desired writ.

THIS was an original application for a mandamus to compel the county commissioners of Dodge county to meet and levy a tax upon all the property of Fremont precinct in said county sufficient to pay a judgment recovered by the relator in the United States circuit court for the district of Nebraska at the May term, 1879, and to place such levy upon the tax roll for 1879.

*W. H. Munger,* for the relator, cited Dillon on Mun. Corp., sec. 687–690. High on Extraordinary Legal Remedies, secs. 380, 395, 396. *State v. Supervisors of Beloit,* 20 Wis., 79. *State v. City of Madison,* 15 Wis., 30. *People v. Supervisors,* 8 New York, 317. *Fremont Building Association v. Sherwin,* 6 Neb., 48. *County Commissioners v. Chandler,* 6 Otto, 205. *People v. Bell,* 10 Cal., 570. *Mayor v. Lord,* 9 Wall., 409. *The State v. Saline County,* 48 Mo., 390.

*W. A. Marlow,* for the respondent.

LAKE, J.

In the consideration of this case the first inquiry naturally suggested is as to the effect of the judgment on which the application for the writ of mandamus is based. Unless this judgment be effective as such

against Fremont precinct, and conclusive of the rights of the tax payers thereof respecting the bonds in question, we suppose there is no foundation for the proposed tax, and that the relief sought must be denied.

The judgment in question is nominally against the board of county commissioners of Dodge county, but contains a provision for its payment by means of a tax to be levied upon the taxable property of Fremont precinct, which is one of the political subdivisions of said county.   The basis of this judgment was the accrued interest on certain internal improvement bonds, issued, it is said, pursuant to a vote of the electors of said precinct.   With due respect to the court rendering it we must say that, after a careful examination of the subject, and in view of what that political subdivision of a county, denominated a precinct, really is, we are unable to discover any ground on which this judgment can possibly stand.   We presume that no one who is at all conversant with the legislation of this state respecting them would for a moment contend that precincts can either plead or be impleaded in actions, or that they are capable of imposing upon themselves any obligation or liability whatever, except in pursuance of express legislative authority.

A glance at our statutes on the subject will show that with us precincts are just what and no more than the word, as ordinarily understood, imports— viz.: territorial divisions or districts created for certain political and administrative purposes, but without even the semblance of corporate character.   Probably the first provision concerning them is found in the " Act to provide for the organization of new counties," etc., the third section of which declares that the county commissioners "shall proceed to divide such county into suitable and convenient precincts," and

fix the time " for holding the first election of precinct
and county officers." [Gen Stat., 228.]  But the only
" precinct " officers to be elected—and indeed the only
ones known to our laws—are justices of the peace,
constables, assessors, and judges and clerks of elec-
tion, whose powers and duties respectively are only
those usually conferred upon such officers.  Neither
of them is empowered to act for or represent the pre-
cinct in any matter whatever.  From this brief state-
ment, which, with the single exception hereafter to
be mentioned, covers all we have to distinguish them
as separate political entities, it will be seen that pre-
cincts are nothing more than mere territorial divis-
ions of the people, made solely for convenience and
efficiency in matters of state government.  And it
will be seen, further, that as such, a precinct has not
been given the power to enter into contracts either di-
rectly or indirectly, nor to assume obligations which
a court might be called upon to enforce.  The failure
of the legislature to bestow upon precincts the capa-
city of suing and being sued is doubtless due to the
fact of their entire inability either to assume obliga-
tions or acquire rights distinct from those of the whole
body of the people of the county, of which they are a
part.

   The exceptional matter above alluded to is the au-
thority given to precincts to aid in the construction
of works of internal improvement.  The manner in
which this may be done is by the issue of interest-
bearing bonds, first authorized by a vote of the qual-
ified voters of the proper precinct, to be paid by
means of a special tax levied and collected on the
taxable property therein, as provided in chapter 35
General Statutes, 448.  When such bonds are issued
conformably to the requirements of this chapter the
mode of their payment is simple and plainly pointed

out. To that end no judgment at law on the bonds, or on the interest coupons as they fall due, is contemplated, or at all necessary, for it is made the duty of the commissioners of the proper county—the one in which the precinct voting the bonds is—to levy and cause to be " collected and paid to the holders of such bonds a special tax on all the taxable property" within the precinct sufficient to pay the interest as it becomes due, and finally the bonds themselves at their maturity. In case of a failure or refusal of the commissioners to perform this duty it is provided that they may be compelled by mandamus to do so; and this is the appropriate and, we think, only remedy.

A judgment is said to be "the final determination of the rights of parties in an action." But it may well be asked whose rights were finally determined by the judgment rendered upon these coupons? The action was against the board of county commissioners, but they had no rights to be determined, nor were they in the least interested therein. The only parties at all interested in any question that could possibly arise upon these coupons were the holders thereof on the one hand and the tax-payers of Fremont precinct on the other, of whom the court had jurisdiction only of the former. The tax-payers were not before the court. They were not heard, and consequently their rights are still undetermined. If they had a valid defense to these bonds they have it still, notwithstanding this judgment, which, as to persons of whom the court had not jurisdiction, is a mere nullity. Such being our views concerning the judgment in question, the writ must be denied.

WRIT DENIED.