JULIUS S. MORTON ET AL., APPELLANTS, V. JAMES CARLIN ET AL., APPELLEES.

FILED APRIL 21, 1897.   No. 8494.

1. Counties: POWERS. Counties and county boards can exercise only such powers as are expressly conferred upon them by statute, and such grant of powers must be strictly construed. (*State v. Lincoln County*, 18 Neb., 283.)

2. ———: ———: PRECINCTS. In the year 1886 the statute governing cities of the second class having a specified number of inhabitants provided that "each city governed by this act shall be divided into not less than four nor more than six wards" (Compiled Statutes, 1885, ch. 14, art. 2, sec. 8), and further provided: "Precinct lines in that part of any county not under township organization, embraced within the corporate limits of a city of the second class, shall correspond with the ward lines in such city, and such precincts shall correspond in number with the wards of the city, and be co-extensive with the same." (Compiled Statutes, 1885, ch. 14, art. 2, sec. 9.) Nebraska City was a city of the class referred to by these sections and had been divided into four wards. On October 4, 1886, the county commissioners of Otoe county, wherein said city was situate, the county not being under township organization, attempted to establish a precinct designated as Nebraska City precinct, and included therein the whole territory of Nebraska City and a number of sections of land. *Held*, That the commissioners had no power or jurisdiction to make such a precinct and their order in that regard was void and of none effect.

3. ———: ———: ———: BONDS: INJUNCTION. On October 6, 1886, the county commissioners issued a call for an election in the so-called Nebraska City precinct, at which was to be submitted to vote of the electors thereof a proposition to issue bonds of the precinct in the sum of $40,000 to aid in the construction of a railroad. This call was issued under the provisions of section 14, chapter 45, Compiled Statutes, by which precincts were authorized to issue bonds for such purpose if the proposition so to do be approved by a specified majority of the votes of the electors at an election called and held pursuant to and in accordance with the provisions of the section. The proposition received the requisite majority and the commissioners issued, or caused the bonds to be issued. *Held*, That there was no precinct in existence which could, by its vote, authorize the issuance of bonds in its name. The bonds were void, and an injunction, in an action by one or more of the taxpayers to be affected, for themselves and others, is a proper remedy and will issue to restrain the levy of taxes with which to pay principal or interest of the bonds.

4. ———. No questions were presented, considered, or adjudicated herein in regard to the rights or interests of purchasers of the bonds.

APPEAL from the district court of Otoe county. Heard below before CHAPMAN, J. *Reversed.*

*M. L. Hayward* and *C. J. Greene,* for appellants.

*Paul Jessen, contra.*

HARRISON, J.

The appellants, as citizens, property holders, and tax-payers of what had been known as Nebraska City precinct, in their own behalf and in behalf of other persons or taxpayers similarly situated, instituted this action against the appellees, the county commissioners and the county clerk of Otoe county, with the purpose of obtaining an injunction by which the appellees would be restrained from levying any tax on any property situate within the limits of what had been designated or known as Nebraska City precinct, to be appropriated to the payment of the principal or interest of bonds issued as the obligations of the said precinct in the aggregate principal sum of $40,000, and ostensibly "to aid in the construction of the Missouri Pacific Railway Company's railroad through said Nebraska City precinct, by purchase of right of way and grounds for depot therein." This is a quotation from the wording in the body of what is attached to the record as an exhibit, and as being an exact counterpart of the printed portions of each of the bonds in question. The petition, after a statement of the interest of the appellants on which was based their right to commence and prosecute this action, and an allegation of the official capacity of the appellees respectively, contained further allegations, as follows:

"That the city of Nebraska City was in 1885 duly organized as a city of the second class having over 5,000 inhabitants, and was from 1885 until the spring of 1891 such a city of the second class, governed by the laws of Nebraska, holding and regulating such cities, and was and is a city in Otoe county, Nebraska.

"4. That Otoe county never at any time was organized under township organization; that by the laws governing such cities it is declared that 'Precinct lines in that part of any county not under township organization, embraced within the corporate limits of a city of the second class, shall correspond with the ward lines of such

city, and such precincts shall correspond in number with the wards of the city and be co-extensive with the same.'

"That said city was in 1885 divided into four (4) wards and has ever since been and now is divided into four (4) wards; that the authorities, prior to December, 1890, never made any change in said city, but disregarding the law in such cases, and conniving to defraud these plaintiffs and other property holders and taxpayers within the pretended bounds of said Nebraska City precinct, said authorities of Otoe county did, on October 4, 1886, by an order made on said day by the commissioners of said county, declare that Nebraska City precinct should constitute all of said Nebraska City and about ten (10) sections of land out of said city. Such order included in said pretended precinct all of said city and all of sections 4, 5, 6, 7, part of 8, all of 14, 15, 16, 17, and 18, in town number 8 north, of range number 14 east; and sections 30, 31, and 32 and 33 in town number 9, range 14, all in said county, four (4) of said sections being fractional. That plaintiffs own both real and personal property situated within the limits of said pretended precinct; that such precinct was so made for the express purpose of allowing and adding to the voters of said city to vote any indebtedness and any taxes upon the property holders of said pretended precinct.

"That in pursuance of said plan of the authorities of said county to defraud and tax the property of such precinct with a heavy bonded indebtedness they did, on the 6th day of October, 1886, issue a call for the people of such pretended precinct to vote upon the proposition to issue forty thousand ($40,000) of bonds of said precinct, to be called Nebraska City precinct bonds, to be issued and placed in the hands of three trustees, to be by them sold and the proceeds from the sale of such bonds to be by said trustees paid over and delivered to certain persons and parties who had, prior to said time, purchased and donated to the Missouri Pacific Railroad Company a right of way through said city and depot grounds in

said city; that said parties had, prior to said date, given a contract to said railroad company for such depot grounds and right of way in and through said city; that such election was held on the 16th day of November, 1886; that afterward, in the year 1886, the county commissioners of said county declared that said vote was carried, and that the proposition for issuing bonds so submitted had been carried and adopted by the people of such precinct, and on the —— day of ——, 1886, such commissioners executed, issued, and delivered to three trustees such $40,000 of so-called Nebraska City precinct bonds; that such bonds were by said trustees, as plaintiffs are informed, sold for the sum of about $30,000, and the proceeds of such sale turned over to the persons who claimed to have so purchased depot grounds and right of way, and expended such sum of money in so paying for such depot grounds and right of way, to carry out said contract made by such persons with said railway company; that such bonds are now claimed to be outstanding; such bonds purport to draw interest at five per cent per annum; that such bonds were not issued, and such call was not made for such bonds to be issued, for any works of internal improvement, but to help certain persons and parties out with such contract as made as aforesaid; that such bonds and the proceeds were issued as a donation to certain private persons and parties, contrary to law, and were issued for no purpose for which bonds can be lawfully issued.

"That such precinct was unlawfully organized; that there was not, and could not at that time be, under the law, any such precinct as said Nebraska City precinct, so to include a city of the second class and ten sections of land outside; that early in 1891 the authorities of Otoe county, Nebraska, reorganized such territory embraced in so-called Nebraska City precinct and made of Nebraska City, within the corporate limits, four (4) separate precincts, and the property lying outside of said city, being said sections of land before mentioned, was added and

annexed to Four-Mile precinct and Wyoming precinct, in said county; that the defendants threaten to and are about to, and will at once, unless restrained by order of this court, proceed to levy upon all of the property, real and personal, within the territory in said so-called Nebraska City precinct a tax of fifty-five (55) mills upon the dollar assessed valuation, for the purpose of paying interest and principal on such $40,000 bonds, so wrongfully and unlawfully issued; that when such bonds were issued property of Otoe county was bonded ten per cent of its assessed valuation; the property of Nebraska City was bonded twenty per cent of its assessed valuation, and that owing to such heavy bonded debt, the heavy expenses, and excessive taxation, property holders and taxpayers were then, and have ever since been, and are now, absolutely unable to pay the assessed taxes upon their property, and a large portion of the property in such city is heavily incumbered with unpaid taxes, which the owners are unable to pay, and in many cases the property is not worth the delinquent taxes thereon. The plaintiffs own real and personal property subject to taxation in said sections of land outside of the city, and also within the corporate limits of said city; that if such levy shall be made plaintiffs will be put to great and irreparable injury, for which they will have no remedy at law."

The appellees, in their answer, admitted all the allegations of the first, second, third, and fourth paragraphs of the petition. Denied that any fraud was practiced in the formation or establishment of Nebraska City precinct by the county commissioners on October 4, 1886, and averred that the action then taken was pursuant to the provisions of section 60 of article 1 of chapter 18 of the Compiled Statutes of Nebraska. It was also stated that all the necessary steps prior and preparatory to the submission to the voters of the precinct of the question of the issuance of the bonds were taken in a regular and legal manner, and that the proposition received in its favor more than two-thirds of the votes cast at the election at which

it was submitted, and that subsequent to such election the bonds were issued.    The further portions of the answer were as follows:

"These defendants further deny that the said bonds were issued for the benefit of the persons who had guarantied the right of way and depot grounds in said precinct to the said railroad, but state that these defendants are informed and believe that said bonds were issued for the sole and only purpose of assisting said railroad to build into and through said precinct, as provided in sections fourteen (14) and fifteen (15) in chapter forty-five (45) of the Compiled Statutes of Nebraska; that the said railroad has since been built into and through said precinct, and has been since the —— day of ——, 1887, and still is, in active operation therein.

"5. Defendants further answering state that a tax has been levied each year since 1886 by the county commissioners of said county for the purpose of paying the interest on said bonds, which tax has been levied upon and collected from the property situated in said precinct; that these plaintiffs, together with the other property owners of said precinct, have paid said tax each year for the past nine years; that said bonds were issued and the interest thereon paid with the knowledge and consent of these plaintiffs, who have thereby recognized the validity of the said bonds and are now estopped by their actions from bringing this action.

"6. These defendants further answering state that they were, as county commissioners of said county, about to levy a tax on the property formerly included in said Nebraska City precinct for the purpose of paying the said bonds, together with the last year's interest thereon, when they were enjoined by the plaintiffs in this action.

"7. These defendants further deny each and every allegation in the plaintiffs' petition contained not herein admitted to be true."

There was a reply, a denial of all new matters pleaded in the answer.    As a result of a trial of the issues there

was a judgment by which the relief asked was refused and the action dismissed, from which this appeal has been perfected.

Counsel for appellants claim that the bonds were invalid, and in this connection present and discuss two main propositions or reasons in support of such claim, which were stated in their brief as follows:

"1. They were not issued in aid of works of internal improvement, but to reimburse private citizens for moneys expended and obligations assumed for the benefit of a private corporation.

"2. They were voted and issued by a precinct not organized according to law."

Of these we will consider the second. We deem it best to state here that, though it is alleged that the bonds were issued and a sale of them made, and that they "are now claimed to be outstanding," it is not pleaded or otherwise made to appear that the bonds were or are held by innocent purchasers or parties without notice; hence we are not now directly considering the rights of such persons, if they exist. We will now direct our attention to the question of the legal existence of Nebraska City precinct at the time of the issuance of the bonds. At the time the county commissioners changed the boundaries of the precinct, and for several months prior thereto, Nebraska City was and had been a city of the second class, under and by virtue of an act of the legislature making provision for and defining municipalities of such class, and had been divided into wards numbered 1, 2, 3, and 4, in accordance with the requirements of a section of the act in relation to cities of the second class, which was as follows: "Each city governed by this act shall be divided into not less than four nor more than six wards, the boundaries of which shall be defined by ordinance." On October 4, 1886, the county commissioners of Otoe county so altered the boundary lines of Nebraska City precinct as to include within it the whole of Nebraska City and a number of sections of land, and on the 6th day of the same

month ordered a special election to be held on the 16th day of November, at which was submitted the bond proposition.   The statutory authority of the county commissioners to establish and fix the boundary lines of precincts, at the time at which this action was taken by the commissioners of Otoe county, was contained in section 60, article 1, of chapter 18, Compiled Statutes, 1895, and section 9, article 2, chapter 14 thereof.  These sections read as follows:

Sec. 60, art. 1, ch. 18, Comp. Stats., 1895: "[Precincts.] Each board of county commissioners shall divide the county into convenient precincts, and, as occasion may require, erect new ones, subdivide precincts already established, and alter precinct lines.   And whenever any portion of territory containing in the aggregate not less than one township of land, and not more than four townships lying contiguous, shall contain not less than fifteen voters, it shall be the duty of the county commissioners, on receipt of a petition signed by a majority of the legal voters therein, to constitute such portion of the territory a voting precinct."

Sec. 9, art. 2, ch. 14, Comp. Stats., 1895: "[Precinct lines.]   Precinct lines in that part of any county not under township organization, embraced within the corporate limits of a city of the second class, shall correspond with the ward lines in such city, and such precinct shall correspond in number with the wards of the city, and be coextensive with the same; *Provided*, That when a ward is divided into two election districts, the precinct corresponding with such ward shall be divided so as to correspond with the election districts."

Otoe county was not, at the time, under township organization; hence the provisions of the latter of the sections we have just quoted were pertinent to the matter in hand.

It was held in the decision in the case of *State v. Lincoln County*, reported in 18 Neb., 283: "Counties and county boards can only exercise such powers as are expressly

granted by statute, and such grant of powers must be strictly construed." If this rule be applied in the case at bar it must be said that the commissioners of Otoe county had no power granted them which, in the establishment of the precinct on the 4th of October, 1886, warranted them in including in what they sought to make Nebraska City precinct the whole of Nebraska City, a city of the second class, with its four wards, together with a number of sections of adjoining land, and the attempt so to do was without authority or jurisdiction on their part, consequently had no force, and the so-called precinct derived from the order no legal establishment or status. This being true, it could not, by its vote, authorize the issuance of the bonds in question in its name, as its obligations or promises to pay, and they were void. There was not a mere irregularity in their authorization and issuance, but a total lack of a body corporate, either *de facto* or *de jure*, having power or authority to issue such bonds. The law under which these bonds were issued (Compiled Statutes, 1885, ch. 45, sec. 14) provides, among other things, that when a petition signed by not less than fifty freeholders of the municipal body contemplating the issuance of bonds shall be presented to the county commissioners, they shall call an election at which to submit the bonding proposition. In 1885 an election was held in Dannebrog precinct, Howard county, at which the question submitted was the advisability of issuing bonds of the precinct to aid in the construction of a railroad. The petition to the county commissioners had a less number of signers than fifty freeholders of the precinct. It was held, in an action of *mandamus* against the auditor of public accounts to compel him to certify the bonds, that no lawful petition had been presented to the board of commissioners. They had no authority to call the election and the proceedings were void. (*State v. Babcock*, 21 Neb., 187.)

In *Wullenwaber v. Dunigan*, 30 Neb., 877, an action to enjoin the issuance of bonds by K township in Seward

county to a railway company, it was held: "At least fifty
freeholders, resident of the township, etc., must sign a
petition to the county commissioners requesting them to
call an election in said township for the purpose of voting
aid for a railway. Without a petition so signed by the
full number required, the commissioners have no juris-
diction."

In the case of *Force v. Town of Batavia*, 61 Ill., 99, it ap-
peared that under an act that authorized townships to
become subscribers for the stock of a railway company
and issue bonds for the stock if such action was author-
ized by the electors of the township at an election, the call
for which should be made by the clerk of the township,
the call for an election was issued by the town super-
visors, and it was held: "That an election under the pro-
visions of this act, by a township, to determine whether
it would make such a subscription, called by the town
supervisors was void, and the vote therefor, although in
favor of subscription, conferred no power on the county
authorities to issue the bonds therefor. The town clerk,
and he only, could legally call such election." (See, also,
*Clarke v. Board of Supervisors of Hancock County*, 27 Ill.,
305; *Williams v. Town of Roberts*, 88 Ill., 11.)

By the law of the state of Kansas newly organized
counties were prohibited from issuing bonds within one
year after the organization. Bonds issued within the for-
bidden time were held invalid even in the hands of *bona
fide* holders. And it was also held: "A purchaser of mu-
nicipal bonds is bound to ascertain whether the muni-
cipality has power to issue them, and an utter want of
such power is not cured by any recitals in the bonds."
(*Coffin v. Board of Commissioners*, 57 Fed. Rep., 137, citing,
in support of the last point, *Dixon v. Field*, 4 Sup. Ct.
Rep., 315, 111 U. S., 83, a Nebraska case.)

In *Coler v. Cleburne*, 9 Sup. Ct. Rep., 720, bonds issued
by the city of Cleburne, Texas, purported on the face to
have been executed January 1, 1884, and to be signed by
the mayor of said city, but were in fact made July 3, 1884,

Morton v. Carlin.

and antedated and signed by W. N. Hodge, a private citizen, formerly mayor of the city, his term of office having expired in April, 1884. The act under which the bonds were issued required that they be signed by the mayor. The bonds were held illegally executed and invalid in the hands of innocent purchasers because not signed by the proper person, and it was said in the opinion: "But we have always held that even *bona fide* purchasers of municipal bonds must take the risk of the official character of those who execute them." (See, also, *Anthony v. County of Jasper*, 101 U. S., 693; *Bayley v. Taber*, 5 Mass., 286; *Sutliff v. Board of County Commissioners*, 13 Sup. Ct. Rep., 318; *Goedgen v. Supervisors of Manitowoc County*, 2 Biss. [U. S.], 328; *Atchison, T. & S. F. R. Co. v. Commissioners of Jefferson County*, 12 Kan., 127.)

"Where there is a want of authority to issue bonds and the officers of the municipality are taking steps to levy a tax for their payment, one or more taxpayers, for themselves and others, have a right to file a bill restraining these officers." (Burroughs, Public Securities, 295.)

It has been said that the bondholders should be made parties to the suit (see *Board v. Texas & P. R. Co.*, 46 Tex., 316), but the question has not been raised or presented in this case; hence it need not be discussed or decided.

Since the conclusions reached on the branch of the case which we have considered will effectually dispose of the controversy, we deem it unnecessary to discuss the other question raised. The judgment of the district court must be reversed and a judgment entered in this court enjoining the appellees from levying any tax to pay the principal and interest of the bonds described in the petition.

REVERSED.