## CLAPP v. OTOE COUNTY, NEB.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1900.)

### No. 1,324.

1. STATE COURT—INJUNCTION INOPERATIVE ON SUIT IN FEDERAL COURT.
 A state court may not, by injunction restraining the collection of taxes, prevent a federal court from proceeding to judgment in an action of which it has jurisdiction, nor from enforcing its judgment by mandamus to compel the levy and collection of taxes to pay it.

2. SAME—CONSTRUCTION OF STATE CONSTITUTION AND STATUTES—WHEN OBLIGATORY—RULE.
 The national courts uniformly follow the construction of the constitution and statutes of a state given by its highest judicial tribunal in all

cases that involve no question of general or commercial law and no question of right under the constitution and laws of the nation.

3. SAME—QUESTION OF GENERAL JURISPRUDENCE.

The question whether or not the illegal action of a municipal or quasi municipal body, in the exercise of a power granted to it, constitutes a defense to bonds issued pursuant to such action, and held by a bona fide purchaser, is a question of general jurisprudence, which the national courts must determine for themselves.

4. SAME—EXCEPTION TO RULE—CONSTRUCTION BY STATE COURTS AFTER RIGHTS ACCRUE NOT CONTROLLING.

It is a well-settled exception to the general rule that decisions of state courts which affect the validity of contracts between citizens of different states, which were made, or under which rights were acquired, before such decisions were rendered, are not obligatory upon the courts of the United States in cases involving those rights.

5. PRECINCT IN NEBRASKA NOT A CORPORATION.

A precinct in Nebraska is not a municipal or quasi municipal corporation, and cannot contract, sue, or be sued.

6. PRECINCT BONDS IN NEBRASKA ARE THE BONDS OF THE COUNTY WHICH ISSUES THEM.

Bonds issued by a board of county commissioners of a county in Nebraska upon a favorable vote of the electors of a precinct, under sections 3518, 3519, and 3520 of the Compiled Statutes of Nebraska of 1899, are the bonds of the county whose board issues them.

7. MUNICIPAL BONDS—RECITALS—ESTOPPEL.

The recitals of the officers of a municipal or quasi municipal corporation, who are invested with the power to perform a precedent condition to the issue of negotiable bonds, or with authority to determine when that condition has been performed, to the effect that they have found that all the requirements of law necessary to authorize the issue of the bonds have been fully complied with, preclude inquiry, in an action on the bonds by an innocent purchaser, as to whether or not the precedent condition was actually performed before the bonds were issued.[1]

8. SAME.

A board of county commissioners which had power to divide its county into precincts, and to subdivide the precincts and change the lines thereof (Comp. St. Neb. 1899, § 2141), which in the exercise of this power defines the boundaries of a precinct, and fails to make them correspond with the wards of a city of the second class, which is located upon a portion thereof (section 1520), and upon a favorable vote of the electors of that precinct issues bonds, and certifies therein that it has found that all the requirements of law necessary to authorize the issue of the bonds have been fully complied with, is estopped, as against an innocent purchaser, from denying that the precedent condition requiring the establishment of a legal precinct was fulfilled.

9. SAME—RECITALS—ESTOPPEL.

A recital in municipal bonds, authorized to be issued under a statute, that they are issued for the purpose stated in the law, and that all the requirements of the law have been complied with, estops the corporation from defending an action on them by an innocent purchaser on the ground that the proposition submitted to the electors upon which the bonds were issued stated that they were to be issued for an unlawful purpose, and did not correspond with the conditions of the bond. Such a recital relieves the innocent purchaser of all inquiry, notice, or knowledge of the proposition submitted to, and the vote of, the electors, and estops the county from denying that a legal proposition was submitted, and a favorable vote had.

---

[1] Bona fide purchasers of municipal bonds, see note to Mattoon Nat. Bank v. First Nat. Bank, 41 C. C. A. 6.

10. SAME.—USE OF PROCEEDS.

A recital in municipal bonds authorized under a statute, that they were issued for the purpose therein stated, and that all the requirements of the statute have been complied with, estops the corporation from defending an action upon them by an innocent purchaser, on the ground that their proceeds were applied to an unlawful purpose.

11. POLITICAL SUBDIVISION AND OFFICERS DE FACTO.

When a quasi municipal corporation and its officers have created, with ample statutory power (Comp. St. Neb. 1899, § 2141), but not in the way prescribed by the statute (section 1520), a political subdivision of the quasi municipality recognized by the organic law, and that subdivision and its inhabitants have assumed to act as such, and the quasi municipal body and its officers have assumed to act on behalf of such subdivision, and the existence of the subdivision and the acts of these officers have been recognized by the officers and departments of a state and by private citizens, without objection, for a considerable period of time, until the rights of private citizens have become vested and fixed in reliance upon the existence of the subdivision and the validity of the acts of the quasi municipality and its officers, the district comprised in the subdivision becomes a political subdivision de facto, and its acts, and the acts of the officers de facto, who represented it, have all the force and validity of acts of a subdivision and of officers de jure. The quasi municipal corporation and its officers, the political subdivision and its citizens, are alike estopped to question, in litigation over the rights of private parties, the existence of the subdivision or the validity of the acts of its officers de facto.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

Francis A. Brogan (C. Heydrick, on the brief), for plaintiff in error. W. D. McHugh, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action upon county bonds of the county of Otoe, in the state of Nebraska, issued upon a favorable vote of the electors of Nebraska City precinct, in that county, under the provisions of sections 3518–3521, Comp. St. Neb. 1899. The defenses to these bonds which are urged upon the consideration of this court are (1) that the national courts are bound to declare these bonds void because, in a suit to which none of the holders of the bonds were parties, the supreme court of the state of Nebraska so decided, more than 10 years after the bonds here in question had been issued, and had been bought by John Martin Clapp, the plaintiff in error, who was a bona fide purchaser thereof for value (Morton v. Carlin, 51 Neb. 202, 70 N. W. 966); (2) because the board of county commissioners of the county of Otoe, in which Nebraska City precinct was located, did not draw its boundary lines where the statutes of Nebraska directed that board to locate them; and (3) because the proposition to issue the bonds, which received the favorable vote of the electors of the precinct, prescribed that the bonds when issued should be delivered to three individuals named therein "as trustees for the persons who shall have paid for the right of way and depot grounds aforesaid," and the bonds were so delivered and their proceeds were applied to pay private parties for expenses which they

had incurred or paid to procure this right of way and these grounds for a railway company. The court below sustained the first defense, and dismissed this action, and the plaintiff in error questions that judgment.

It is not claimed that the decree of the supreme court of Nebraska in Morton v. Carlin, 51 Neb. 202, 70 N. W. 966, which enjoins the county commissioners and county clerk of Otoe county from levying taxes to pay these bonds, renders the questions in this action res adjudicata, since neither the plaintiff in error nor any one in privity with him was a party to that suit. That was a taxpayers' suit to enjoin the county commissioners and county clerk of Otoe county from levying taxes to pay these bonds, and the injunction of a state court is futile against an action in the national courts brought against the debtor by the holders of the bonds, or against a mandamus to enforce a judgment rendered in such an action. A state court may not by injunction prevent a federal court from proceeding to judgment in an action of which it has jurisdiction, or from enforcing its judgment by a mandamus to compel the levy and collection of taxes to pay it. Holt Co. v. National Life Ins. Co., 80 Fed. 686, 691, 25 C. C. A. 469, 474, 49 U. S. App. 376, 385; Riggs v. Johnson Co., 6 Wall. 166, 18 L. Ed. 768; Supervisors v. Durant, 9 Wall. 415, 19 L. Ed. 732; Hawley v. Fairbanks, 108 U. S. 543, 2 Sup. Ct. 846, 27 L. Ed. 820. Nor was there any attempt by the supreme court of Nebraska to give any such effect to its decree. On the other hand, it expressly stated in its opinion that the fact that the bonds were held by innocent purchasers was neither pleaded nor made to appear in that case, and that it was not directly considering the rights of such persons, if they existed. Morton v. Carlin, 51 Neb. 209, 70 N. W. 966.

Notwithstanding all this, it is earnestly contended by counsel for the defendant in error that inasmuch as the supreme court of Nebraska decided, in Morton v. Carlin, that Nebraska City precinct was never legally constituted, and that, therefore, all the bonds here in controversy were void, and inasmuch as it reached that conclusion by construing the statutes of that state, its decision is binding upon the federal courts, under the rule so often announced and applied in this court, that "the national courts uniformly follow the construction of the constitution and statutes of a state given by its highest judicial tribunal, in all cases that involve no question of general or commercial law, and no question of right under the constitution and laws of the nation." Madden v. Lancaster Co., 65 Fed. 188, 192, 12 C. C. A. 566, 570, 27 U. S. App. 528, 536. There are, however, two exceptions to this rule as vital and as clearly established as the rule itself. The first is that decisions of state courts which affect the validity of contracts between citizens of different states, which were made, or under which rights were acquired, before there was a judicial construction of the constitution or statute which seemed to authorize the contracts, are not obligatory upon the courts of the United States. Speer v. Board, 88 Fed. 749, 760, 32 C. C. A. 101, 113, 60 U. S. App. 38, 57; Burgess v. Seligman, 107 U. S. 20, 27, 2 Sup. Ct. 10, 27 L. Ed. 359; Pleasant Tp. v. Ætna Life Ins. Co., 138 U. S. 67–72, 11 Sup. Ct. 215, 34 L. Ed. 864; Louisville Trust Co. v. City of Cincin-

nati, 47 U. S. App. 36–47, 22 C. C. A. 334, 339, 76 Fed. 296, 301; Jones v. Hotel Co., 30 C. C. A. 108, 86 Fed. 370, 373. The other exception is that conceding that the action of a municipal or quasi municipal body was illegal, as held by a state court, still the question whether or not the illegal action of such a body, in the exercise of a power granted to it, constitutes any defense to bonds issued or contracts made pursuant to such action, and held by a bona fide purchaser, is a question of general jurisprudence, which it would be a dereliction of duty for a federal court to decline to consider and determine for itself. Speer v. Board, 88 Fed. 749, 762, 32 C. C. A. 100, 114, 49 U. S. App. 38, 39; Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 70 Fed. 201, 203, 17 C. C. A. 62, 65, 36 U. S. App. 152, 156.

The plaintiff in this case was a citizen of the state of New York. The bonds of this county were issued in 1886, and he purchased and paid for them in good faith in 1887, without notice of any defect in their execution or in the preliminary proceedings which led to their emission. By this purchase he entered into a contract relation with this county, a citizen of the state of Nebraska, before any construction had been given by any court to any statute of that state, or to any action of the board of county commissioners of that county, which cast a shadow of suspicion upon the bonds he bought. By his purchase he acquired the right, under the constitution and laws of the United States, to have his contracts interpreted, and his rights enforced, in a court of the United States, and a fortiori to the independent judgment of that court upon the legal questions his case presents. No decision of a state court rendered after his rights under these contracts had vested could forestall the judgment of a national court upon these questions, or deprive him of the right to invoke, or relieve a federal court of the duty to accord, its independent consideration and decision of his case. Much less could the decision of a state court, which studiedly ignored the rights of innocent purchasers of these bonds, and which was not rendered until 10 years after they were bought, deprive the purchaser of the right to the independent opinion of the federal court to which he presents them. This question is not new in this court. It was considered more at length in Speer v. Board, 32 C. C. A. 100, 88 Fed. 760, and reference is made to the opinion in that case for a more extended discussion of it, and for a review of some of the authorities which sustain the proposition which we have announced. In that case a township in the state of Kansas had been organized and had incurred obligations on account of which warrants were subsequently issued by the county in which the township was located. After the plaintiff in that case, who was a citizen of Illinois, had bought his warrants, the supreme court of Kansas held, in an action against the county by a third party upon a warrant of the same class as those held by the plaintiff in the federal court, that these warrants were void because the law under which Kearney township was organized was unconstitutional, and therefore neither the township nor its officers ever had any existence, either de facto or de jure. Atchison, T. & S. F. R. Co. v. Board of Com'rs of Kearney Co., 48 Pac. 583. But this court held, after a full consideration of the question, and a review of the authorities, that

this decision of the state court was not controlling, and upon an independent investigation reached the opposite conclusion, and held that the warrants were valid. The decision in that case rules the question presented by the first defense urged upon our consideration in this case, and we adhere to the views which we there expressed. The decision of the supreme court of Nebraska in Morton v. Carlin, 51 Neb. 202, 70 N. W. 966, was not rendered until 10 years after the rights of the plaintiff under his bonds had vested, and it is not controlling authority in any federal court upon the questions which involve those rights.

The second defense for our consideration is that the bonds are void because the board of county commissioners of Otoe county did not locate the lines of Nebraska City precinct so that they corresponded with the lines of the wards of Nebraska City, which was located upon a part of the precinct, as that board was required to do by the statutes of the state of Nebraska. The section of the statutes which is invoked to sustain this defense reads:

"Precinct lines in that part of any county not under township organization, embraced within the corporate limits of a city of the second class, shall correspond with the ward lines in such city, and such precinct shall correspond in number with the wards of the city and be coextensive with the same." Comp. St. Neb. 1899, § 1520.

The fact upon which this defense rests is that in 1886, when the bonds were voted and issued, the lines of Nebraska City precinct did not correspond with the ward lines of Nebraska City, which was a city of the second class, and was located upon a portion of the precinct which was not under township organization, but those lines were so drawn as to include several wards of the city and property without the city. It is insisted by counsel for plaintiff in error that the statute upon which this defense is founded is unconstitutional and void, because there was a material defect in its title as it was published, and another defect in its title as it passed the legislature of the state, which has been held by the supreme court of the state to make it invalid. Webster v. City of Hastings, 81 N. W. 510. A large portion of the briefs of counsel is devoted to a discussion of this question. In our view of this case, it is unnecessary to consider that question. Conceding, but not deciding, that the section of the statute which we have quoted was the law of the state of Nebraska when the bonds were voted and issued, is the fact that the board of county commissioners of this county had neglected to comply with the provisions of this statute fatal to the bonds which the county issued, on the theory that it had made a legal precinct, and which have been bought by an innocent purchaser, upon the faith of the certificate of the county that it had complied with this statute?

A precinct, under the statutes of Nebraska, is a mere political subdivision of a county. It is not a municipal or quasi municipal corporation or entity. It does not govern itself. It does not choose its governing officers, and it can neither act nor contract for itself, sue nor be sued. It is the mere creation of the board of county commissioners of the county in which it is situated, and that board is vested with plenary power to bring it into existence, to act and con-

tract for it while it is in being, and to enlarge, to diminish, and to destroy it. The statutes of Nebraska provide that "each board of county commissioners shall divide the county into convenient precincts; and as occasion may require, erect new ones, subdivide precincts already established, and alter precinct lines" (Comp. St. 1899, § 2141); that any precinct organized according to law is authorized to issue bonds in aid of works of internal improvements upon a favorable vote of its electors; that a petition of not less than 50 freeholders of the precinct shall be presented to "the county commissioners * * * or the board authorized to conduct the business in such precinct," and the board of county commissioners alone has that authority; that the petitioners shall give bond, "to be approved by the county commissioners," for the payment of the expenses of the election, if the proposition is defeated (Comp. St. 1899, § 3518); that, if two thirds of the votes cast shall be in favor of the proposition, "the county commissioners" shall issue the bonds, and the chairman of the board of county commissioners shall sign them, and the county clerk shall attest them (Comp. St. 1899, § 3519); and that the county commissioners shall each year levy upon the taxpayers' property in the precinct a tax sufficient to pay the interest and 5 per cent. of the principal sum (Comp. St. 1899, § 3520). Now, there can be no obligation without an obligor; no contract without a contractor. A precinct cannot contract and cannot be an obligor because it is not a corporate entity. The favorable vote of its electors authorizes the precinct to do nothing. It can neither act nor contract, sue nor be sued. But, when its electors vote favorably upon a proposition to issue bonds, the statutes of Nebraska authorize the board of county commissioners of the county in which the precinct is situated to issue these bonds, to levy the necessary taxes upon the property in the precinct to raise money to pay them, and to apply this money to that purpose. Who, then, becomes the obligor in these bonds? Who makes the contracts? Who agrees to pay them? There can be but one answer to these questions, and that is that the county which issues them, and which, under the statute, has the power to levy the taxes to raise the money to discharge them, agrees to pay them. The conclusion is irresistible that bonds issued by the county commissioners of a county in Nebraska, upon the favorable vote of the electors of a precinct therein, are the obligations of the county. In legal effect, they are the contracts of the county that it will pay the bonds, and the only difference between such bonds and the ordinary bonds of a county is not in the obligation of the county to pay them, but in the method by which the county may raise the money to discharge its own obligations. In the former case, it may levy the taxes upon the property in the precinct which voted for their issue; in the latter case, upon all the property in the county. But the obligation of the county to pay them is as sacred and effective in the one case as in the other. Davenport v. Dodge Co., 105 U. S. 237, 241, 26 L. Ed. 1018; Nemaha Co. v. Frank, 120 U. S. 41, 7 Sup. Ct. 395, 30 L. Ed. 584; Blair v. Cuming Co., 111 U. S. 363, 4 Sup. Ct. 449, 28 L. Ed. 457; State v. Dodge Co., 10 Neb. 20, 4 N. W. 370. In Davenport v.

Dodge Co., 105 U. S. 241, 26 L. Ed. 1020, speaking to this question, the supreme court said:

"Precincts in Nebraska are but political subdivisions of a county. They have no corporate existence, and cannot contract or be contracted with. They have no corporate officers, and can neither sue nor be sued. Certain officers are elected by the voters of precincts for political, administrative, and judicial purposes, but they are in no sense the representatives of the people of the territory as a municipality. State v. Dodge Co., 10 Neb. 20, 4 N. W. 370. Precincts are governed by the county commissioners, the governing board of the county, and by the appropriate officers of the state. Their relation to the county is like that of a ward to a city. Having no corporate existence, no separate municipal authority, they cannot, says again the supreme court of the state in the case last cited, 'enter into contracts, directly or indirectly, nor assume obligations which a court might be called on to enforce.' Hence the precinct cannot become the obligor of precinct bonds, and we think it follows that the county, which does have a corporate existence, and can contract and be contracted with, and upon whose officers is imposed the duty not only of issuing the bonds, but of providing for the payment of them, is the political entity bound by the obligation and charged with the debt created thereby. The only difference between the two kinds of debt is that in one all the taxable property of the county is charged with its payment, and in the other only a part."

The bonds upon which this action is based, then, are the obligations of the county of Otoe issued by its board of county commissioners and held by an innocent purchaser. It is claimed that the board was without power to issue them, because it had never properly constituted Nebraska City precinct. But this contention sticks in the bark. The board of county commissioners had the power to properly constitute Nebraska City precinct. That board was given the authority, and charged with the duty, to divide its county into legal precincts, to make every precinct in that county according to the statutes of its state, and it was given the power to issue bonds on account of those precincts upon a favorable vote of their electors. The creation of Nebraska City precinct, in accordance with the provisions of the statutes, was, like the call for an election therein upon the proposition to issue the bonds, one of the conditions precedent to their issue. The power to comply with these conditions, and the power to comply with the former, as much as the power to comply with the latter, was vested in a single body, and that body was the board of county commissioners of Otoe county. It had plenary power to divide the county into precincts, to subdivide precincts and alter precinct lines, and it was perfectly practicable for this board to make Nebraska City precinct and every other precinct in the county in the way prescribed by the statutes, so that the boundaries of each one of them should correspond with those of the wards of any city of the second class located upon any portion of them. In the same body to which the power to comply with these conditions was given the statutes also vested the authority, and upon the same body they imposed the duty, to ascertain and determine whether or not this and all other precedent conditions to the issue of the bonds had been complied with before it issued them. Presumably it did investigate, ascertain, and determine this fact; for upon the face of the bonds which it issued it wrote this certificate:

"The question of issuing this bond and the thirty-nine others of said series, amounting in the aggregate to forty thousand dollars, was submitted, by the county commissioners of said county of Otoe, to a vote of the legal voters of Nebraska City precinct aforesaid, in the manner provided by law, at an election duly ordered and held on the sixteenth day of November, A. D. 1886, at which said election more than two-thirds of the votes were cast in favor (—) the proposition to issue said bonds; and the county commissioners of said county, being vested by law with authority for that purpose, having found that all the requirements of law necessary to authorize the issue and delivery of said bonds had been fully complied with, ordered that they be issued and delivered accordingly, and that they be and continue a subsisting debt against said precinct until they are paid and discharged."

These bonds have now been bought by a bona fide purchaser upon the faith of this certificate. Can this board or the county which issued these bonds now be heard, after the bondholder has parted with his money in reliance upon this certificate, to say, to defeat its bonds, that the certificate was false; that while it had ample power to make this precinct in accordance with the law, and while it certified that it had complied with the statute, the fact was that it had not done so, and therefore its bonds are void? This court has discussed and answered this question so often that it would be a work of supererogation to do more than to state the principles on which that answer rests, and to cite some of the authorities which sustain them. One who by his acts or representations, or by his silence when he ought to speak out, either intentionally, or through culpable negligence, induces another to believe certain facts, and the latter rightfully acts on such belief, so that he will be prejudiced if the former is permitted to deny their existence, is conclusively estopped to interpose such denial. Corporations, municipal and quasi municipal bodies, and their officers, that have induced others to act to their prejudice by the issue of certificates or representations that they have performed acts which the law intrusted to them to perform, constitute no exception to this salutary rule. The recitals of the officers of a municipal or quasi municipal corporation, who are invested with the power to perform a precedent condition to the issue of negotiable bonds, or with authority to determine. when that condition has been performed, that they have found that all the requirements of law necessary to authorize the issue of the bonds have been fully complied with, precludes inquiry, as against an innocent purchaser for value, as to whether or not the precedent condition challenged had been performed before the bonds were issued. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 57 U. S. App. 593, 606; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 792, 793, 10 C. C. A. 639, 651, 652, 27 U. S. App. 244, 266, 268; School Dist. v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84, 27 L. Ed. 90; Town of Colloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Commissioners v. Beal, 113 U. S. 227, 238, 239, 5 Sup. Ct. 433, 28 L. Ed. 966; City of Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803, 37 L. Ed. 673; City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 40 L. Ed. 760. A corporation and its officers, who, by the apparent legality of their obligations, have induced purchasers to buy them, are estopped from denying their validity on the ground that in some of the preliminary proceedings which led to their execution, or in their execu-

tion itself, they failed to comply with some law, rule, or statute which they might have complied with, but which they carelessly neglected. Speer v. Board, 88 Fed. 749, 758, 32 C. C. A. 101, 111, 60 U. S. App. 38, 53. The creation of Nebraska City precinct in the way prescribed by the statutes of Nebraska was a condition precedent to the issue of these bonds of the county of Otoe upon the favorable vote of its electors. That county and its board of county commissioners had full power to create or modify that precinct so that it should be in accordance with the statutes of that state. They also had full power to determine whether or not that condition had been complied with, and to certify the answer to that question upon the face of the bonds. They negligently failed to comply with it, but clearly certified that they had done so. Upon the faith of that certificate, plaintiff has purchased the bonds. In morals, in equity, and at law they are now estopped to deny the truth of their certificate in order to relieve themselves from their obligations.

There is another reason why the defense which we have been considering cannot be sustained. It is that the general acquiescence by the inhabitants of a political subdivision organized under color of law, and by the departments and officers of the state and county having official relations with it, gives to the acts and contracts of those officers on its behalf as a subdivision de facto all the force and validity of their acts in its behalf as a subdivision de jure. The acts of ordinary municipal bodies organized under color of law depend far more upon general acquiescence than upon the legality of their action or the existence of every condition precedent prescribed by the statutes under which they organize and act. The interests of the public which depend upon such municipalities and their various subdivisions, the rights and the relations of private citizens which become fixed in reliance upon their existence, the injustice and confusion which must result from an ex post facto avoidance of their acts, commend the justice and demand the enforcement of the rule that, when a municipal body or a political subdivision of a state or county has, or its officers have, assumed, under color of authority, and have exercised for a considerable period of time, with the consent of the state and its citizens, powers of a kind recognized by the organic law, neither the corporation, subdivision, nor any private party can, in private litigation, question the legality of the existence of the corporation or subdivision. Speer v. Board, 88 Fed. 749, 764, 32 C. C. A. 101, 116, 60 U. S. App. 38, 62; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 787, 10 C. C. A. 637, 647, 27 U. S. App. 244, 259; Ashley v. Board, 60 Fed. 55, 61, 8 C. C. A. 455, 461, 16 U. S. App. 656, 671; People v. Maynard, 15 Mich. 463, 470; School Dist. No. 25 v. State, 29 Kan. 42, 49, 50; City of St. Louis v. Shields, 62 Mo. 247, 252; State v. Carroll, 38 Conn. 449, 471; State v. Rich, 20 Mo. 393, 396; Clement v. Everest, 29 Mich. 19, 23; Donough v. Dewey, 82 Mich. 309, 46 N. W. 782, 783; Carleton v. People, 10 Mich. 250; Clark v. Com., 29 Pa. St. 129; Com. v. McCombs, 56 Pa. St. 436.

In Speer v. Board, a township in Kansas had been organized under an unconstitutional law, and had existed for the limited period of one year. The inhabitants of the township, the state, and county

officers recognized its existence, but years afterwards the supreme court of that state held that it had no existence, because the law under which it was organized was unconstitutional. After a full consideration of the question presented in that case, and a review of many authorities upon the question, this court held that an indebtedness incurred by that township could not be defeated on the ground that the law under which it was organized was unconstitutional, (1) because the validity of the organization of Kearney township could not be questioned collaterally in that action, and (2) because, even if it were organized under the unconstitutional law, that law, until it was challenged in, or declared void by, the judicial department of the government, was sufficient to confer color of legality upon the township, and it was still a de facto organization, whose acts and contracts were valid so far as they involved the interests of the public and of third parties who relied upon them. Reference is made to the opinion in that case, at pages 763–768, 88 Fed., pages 115–121, 32 C. C. A., pages 61–69, 60 U. S. App., for a discussion of the proposition upon which the decision is based, and a review of some of the authorities which sustain it. We will not repeat the discussion here. Suffice it to say that the principle recognized in that case is conclusive of the defense that the bonds in this case are void in the hands of an innocent third party because Nebraska City precinct did not exist. Nebraska City precinct was legally constituted by an order of the board of county commissioners on December 6, 1877. It remained legally constituted until, in 1885, the city of Nebraska City, which was located upon a part of this precinct, became a city of the second class, and the statute which we have quoted in an earlier part of this opinion, requiring the precinct boundaries to correspond with the ward boundaries of such a city, took effect upon this precinct.

On October 4, 1886, the boundaries of the precinct were changed by order of the board of county commissioners of Otoe county. But the precinct, as changed, included within its boundaries the city of Nebraska City and outlying territory, and its lines did not correspond with the lines of the wards in Nebraska City. While the precinct remained in this condition, and in November, 1886, the electors in the territory within the boundaries of this precinct fixed by the order of October 4, 1886, voted to issue these bonds. They were issued in December of that year, and they were purchased by the plaintiff in January, 1887. From October 4, 1886, until the year 1891 the lines of this precinct remained unchanged. The board of county commissioners then divided the precinct into several, so that the precinct lines within the city of Nebraska City corresponded with the lines of the wards therein, and the outlying territory was divided into two adjoining precincts. In the years 1887, 1888, 1890, 1891, 1892, 1893, and 1894 the county commissioners levied upon the property within the boundaries of the precinct as fixed by the order of October 4, 1886, the taxes necessary to pay the interest upon these bonds, and applied the money so raised to that purpose. From 1887 to 1891 constables and justices of the peace were elected, qualified, and served as officers of the precinct fixed by the order of October 4, 1886, and during all that time the county assessor was elected, quali-

fied, and made the only assessments of property ·for the purpose of county taxation in Nebraska City precinct, according to the lines fixed by that order. During all this time there was no other precinct government within the territory described by that order, and all the citizens and inhabitants in that district, and all the officers of the state and the county, recognized the territory bounded by that order as a legally constituted precinct of the county of Otoe. Taxes were levied and assessed by an assessor chosen in that precinct. Justices of the peace chosen therein doubtless tried and decided lawsuits, solemnized marriages, took and certified the acknowledgments of deeds. Constables elected in that precinct arrested and imprisoned offenders upon warrants issued by these justices. All the functions of a legally constituted precinct, all the functions of the officers of such a precinct, were discharged for more than four years, upon the theory that this was an existing precinct, without objection from state, county, or individual. Not only this, but this precinct was not organized without color of law. The board of county commissioners was fully empowered to· constitute precincts and to prescribe· their boundaries. The only defect was that in exercising this power it overlooked and failed to comply with a direction of the statute as to the mere manner of its exercise. While the existence of this precinct was thus recognized and acquiesced in without objection by public officers and private citizens, its electors complied with the provisions of the law, and the county issued and sold these bonds. It may be · that if the state or the county, or any taxpayer of this precinct, had challenged its existence, or the right of the county or its officers to issue these bonds, by a writ of quo warranto, or by an application for an injunction, before public interests were affected or private rights had vested under them, the issue of the bonds might have been stayed. The assessor, the justices of the peace, and the constables might have been restrained from exercising their functions, and the board of county commissioners might have been compelled to change the boundaries of the precinct. But no such action was taken. The proposition to issue the bonds was presented to the board of county commissioners on October 6, 1886. On that day a special election in the precinct was called for November 16, 1886, and the bonds were not issued until December in that year. Here was ample time for an objector to present the question which seems to have been first raised after this precinct and its officers had been discharging their respective duties without question for more than seven years. It is too late now for public officers or private parties, in private litigation, to question the legality of the existence of this precinct, or of the contracts made on its behalf, in reliance upon which money has been advanced and rights have vested. When these bonds were issued and sold, every citizen of the territory comprised within the order of October 4, 1886, and called "Nebraska City Precinct," and every piece of property therein, was represented by the board of county commissioners of Otoe county in all the proceedings which culminated in the issue of these bonds. That board was the agent of these citizens and this property, under the statutes, to borrow the money which they voted to obtain upon the bonds. Under the color of law, it con-

stituted the precinct, called the election, issued the bonds, and no man objected. Under these circumstances, Nebraska City precinct was a precinct de facto, and the board of county commissioners were its governing officers de facto, and the silence and general acquiescence of the private citizens within it and the officers of the state and county, until after the rights of the bondholders had vested, estop them from questioning the existence 'of the precinct, or the validity of the acts of these officers, as against the purchasers of the bonds. The acts of these officers have all the force of the acts of officers de jure for a precinct legally constituted, and the owners of the property within the boundaries of the order of the board of county commissioners of October 4, 1886, are estopped, by their silence and acquiescence, from denying that the property within those limits is liable to taxation to raise the necessary amount to pay these bonds.

Another contention of counsel for the defendant in error is that the bonds are void because the proposition submitted to the voters of the precinct contained these words: "The said bonds, when signed as required by law, to be delivered to Wm. E. Hill, Robert Payne, and F. W. Rottman, as trustees for the persons who shall have paid for the right of way and depot grounds aforesaid;" and because the bonds were delivered to them, and the proceeds of them were applied to the purpose there indicated. But these facts do not appear upon the face of the bonds, and they contain not only the recital which we have heretofore quoted, to the effect that all the requirements of law necessary to authorize the issue and delivery of the bonds had been fully complied with, but also this statement: "This bond is one of forty of like date, issued to aid in the construction of the Missouri Pacific Railway Company's Railroad through said Nebraska City precinct, by purchase of right of way and grounds for depot therein." These recitals import that the bonds were issued in pursuance of a lawful and proper proposition, of a legal vote of the electors of the precinct, and of honest and just action on the part of the board of county commissioners under the statute. They relieve the innocent purchaser of all inquiry, notice, and knowledge of the actual proposition submitted, and of the action of the board thereon, and estop the county and the inhabitants of the precinct from denying that a legal proposition was submitted and sustained by a vote of the electors, and that the bonds are based upon such action. Board of Co. Com'rs v. National Life Ins. Co., 90 Fed. 228, 231, 32 C. C. A. 591, 594, 61 U. S. App. 53, 58; City of Evansville v. Dennett, 161 U. S. 434, 439, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; Wesson v. Saline Co., 73 Fed. 917, 919, 20 C. C. A. 227, 229, 34 U. S. App. 680, 684; Rathbone v. Board, 83 Fed. 125, 131, 27 C. C. A. 477, 483, 49 U. S. App. 577, 589; City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 31 C. C. A. 585, 60 U. S. App. 78; Walnut v. Wade, 103 U. S. 683, 696, 26 L. Ed. 526; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 57 U. S. App. 593, 606; National Life Ins. Co. v. Board of Education, 62 Fed. 788, 792, 10 C. C. A. 637, 651, 27 U. S. App. 244, 266; Board v. Heed, 41 C. C. A. 668, 101 Fed. 768.

Nor is it any defense to the action of this innocent purchaser that the board of county commissioners of Otoe county certified upon the face of the bonds that they were issued for a lawful purpose, but actually issued them and applied their proceeds to an unlawful purpose. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 275, 277, 30 C. C. A. 38, 41, 43, 57 U. S. App. 593, 600, 603; Board of Com'rs of Seward Co. v. Ætna Life Ins. Co., 90 Fed. 222, 32 C. C. A. 585; 61 U. S. App. 41; West Plains Tp. v. Sage, 69 Fed. 943, 946, 16 C. C. A. 553, 557, 32 U. S. App. 725, 733; Board of Com'rs of Barber Co. v. Society for Savings, 41 C. C. A. 667, 101 Fed. 767. The judgment below is reversed, and the case is remanded to the court below, with directions to enter judgment for the plaintiff for the amount claimed in the complaint.