SANBORN, Circuit Judge,
after stating the case as above, delivered the opinion of the court.
The only ground on which it is contended that the judgment below in this case was erroneous is that the tax of 50 mills' on the dollar, which was levied on the property in school district No. 44, pursuant to the judgment of mandamus against that district, to raise money to pay a part of the money judgment against it, was in excess of the limitation prescribed by the statutes of Nebraska for the annual levy of taxes by that district, and was therefore illegal and void. The legislature of the state of Nebraska by “An act to provide for the payment of judgments recovered against municipal corporations,” which took effect on February 18, 1867, provided:
“4112. That whenever any judgment shall be obtained in any court of competent jurisdiction in this territory for the payment of a sum of money against any county, township, school district, road district, town or city board of education, or against any municipal corporation, or when any such judgment has been'recovered and now remains unpaid, it shall be the duty of the county commissioners, school district board of education, city council, or other corporate officers, as the case may require, to make provisions for the prompt payment of the same.
“4113. If the amount of revenue derived from taxes levied and collected for ordinary purposes shall be insufficient to meet and pay the current expenses for the year in which the levy is made, and also to pay the judgment remain *688 ing unpaid, it shall he the duty of the proper officers of the corporation, against which any such judgments shall have been obtained and remaining unsatisfied, to at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments.
“4114. The tax shall be levied upon all the taxable property in the district, county, township, town, or city, bound by the judgment, and shall be collected- in the same manner and at the same time provided by law for the col-' lection of other taxes.
“4115. The corporate officers whose duty it is to levy and collect taxes for the payment of the current expenses of any such corporation, against which a judgment may be so obtained, shall also be required to levy and collect the special tax herein provided for, for the payment of judgments.
“4116. If any such corporate authorities whose duty it is, under the provisions of this act, to so levy and collect the tax necessary to pay off any such judgment, shall fail, refuse or neglect to make provisions for the immediate payment of such judgments, after request made by the owner, or any person having an interest therein, such officers shall become personally liable to pay such judgments, and the party or parties [interested] may have an action against such defaulting officers to recover the money due on the judgment, or he or they having such interest may apply to the district court of the county in which the judgment is obtained, or to the judge thereof in vacation, for a writ of mandamus to compel the proper officers to proceed to collect the necessary amount of money to pay off such indebtedness, as provided in this act; and when a proper showing is made by the applicant for said writ, it shall be the duty of the court or judge, as the case may be, to grant and issue the writ to the delinquents, and the proceedings to be had in the premises shall conform to the rules and practice of said court, and the laws of this territory, in such cases made and provided.”
Oobbey’s Consol. St. Neb. 1891.
By “An act to establish a system of public instruction for the state of Nebraska,” approved March 1, 1881, which took the place of similar acts passed or amended in 1867, 1869, 1871, 1873, and 1875, the same legislature enacted that:
“3542. The legal voters at any annual meeting shall determine by vote the number of mills on the dollar of the assessed valuation which shall be levied for all purposes—except for the payment of bonded indebtedness and purchase or lease of school house—which number shall not exceed twenty-five (25) mills in any year. The tax so voted shall be reported by the district board to the county clerk, and shall be levied by the county board, and collected as other taxes.
“3543. The legal voters may also, at such meeting, determine the number of mills, not exceeding ten mills on the dollar of assessed valuation, which shall be expended for the building, purchase or lease of school house in said district, when there are no bonds for such purpose, which amount shall be reported, levied and collected as in the preceding section; provided, that the aggregate number of mills voted shall not exceed twenty-five (25) mills.”
Cobbey’s Consol. St. Neb. 1891.
The claim of the plaintiffs in error is that sections 3542 and 3543, supra, limit the power of school districts to vote taxes to pay judgments under the special law of 1867 to 25 mills on the dollar, annually, for all purposes, and that, as in this case the district voted 25 mills for current expenses and 50 mills to pay the judgment, the levy of the 50 mills was in excess of the limitation, and void. If this contention could have been maintained under the law, it might have constituted a good defense for the school district in the original action for a mandamus against that corporation; but it is difficult to understand how, after that judgment was rendered, it could be any excuse for the failure of the county treasurer or any other county officer to *689 collect the tax which the district voted, certified, and caused to be levied in compliance with the judgment in that case. The circuit court necessarily heard and decided the very issue which the plaintiffs in error are seeking to retry here before it adjudged that the school district must certify and cause the 50 mills on the dollar to be levied on the property within its boundaries to pay the money judgment. That court could have directed no levy which the district and its officers had not the power to certify and cause to be made, and the extent of that power, under the statutes we have quoted, must have been the very first question that challenged its consideration, and demanded its judicial decision in that case. That its decision was adverse to the view urged upon us by the counsel for the plaintiffs in error is evident from the fact that it directed the school district to cause twice the total amount which they claim it could cause to be levied annually for all purposes to be levied annually for the sole purpose of paying this judgment. It is not material that the school district and its officers failed to interpose the defense now urged in that action. It is a universal rule that in an action between the same parties, or those in privity with them, upon the same claim or demand, a judgment upon the merits is conclusive, not only as to every matter offered, but as to every admissible matter which might have been offered to sustain or defeat the claim or demand. Board of Com’rs v. Platt, 79 Fed. 567; Cromwell v. Sac Co., 94 U. S. 351, 352; Dickson v. Wilkinson, 3 How. 57, 61; Dimock v. Copper Co., 117 U. S. 559, 565, 6 Sup. Ct. 855. The parties to the original action of mandamus were the defendant in error in this case on one side and school district No. 44 and its officers on the other; and as to them, and as to all parties in privity with them, the question which counsel seek to present in this case is res adjudicata. The judgment in that case conclusively estops them all from again presenting this defense, for that judgment has never been reversed, set aside, or modified, and this action is based upon the same claim as was that. How, then, can.the plaintiffs in error be heard to retry this question? Their only connection with, or interest in it, or in any question involved in this case, arises by virtue of their privity with the parties to that proceeding. They have no pecuniary interest in any of these questions. They bear no relation to the subject-matter of the controversy, or to the questions involved in it, save that which is established by the law and the statutes of Nebraska, which impose upon them the duty of levying, collecting, and paying over the tax which the school district voted and certified, pursuant to the command of the judgment in that case. Their relation to that judgment of mandamus and to the parties to that action is the same that a sheriff holding an execution bears to the parties to the action in which it was rendered. The county treasurer of Holt county holds the tax list which contains this tax of 50 mills on the dollar upon the property in school district No. 44, and the warrant of the county clerk, and the direction of the statute, commanding him to collect it, and pay it over for the benefit of this insurance company, pursuant to the judgment under which it was levied. Cobbey’s Consol. St. Neb. 1891, §§ 3981, 3982, 3986, 39S8. The plain *690 tiffs in that judgment ask him to proceed to collect the money, and pay it over for the benefit of the plaintiff in the money judgment, and the county treasurer and the other plaintiffs in error answer that they will not, because the original judgment of mandamus against the district was for the wrong party. Who made them an appellate tribunal to review the judgments of the courts? Who ever heard that a sheriff could lawfully excuse himself from collecting an execution against the defendant on the ground that the judgment of the court which issued it should have been against the plaintiff? The fact is that under the law and the statutes in Nebraska the plaintiffs in error are the mere hands of the court in this case, the mere ministerial officers upon whom the duty has been imposed of taking the amount owing under the original judgment of mandamus from the taxpayers in school district No. 44, and paying it over to the insurance company to whom it is due. They stand in privity with both the plaintiffs and defendants in the original judgment of mandamus, and their only connection with the subject-matter of that action,-or with this case, arises from that privity alone. They are, accordingly, as effectually estopped from questioning the decision of the court in that case, and from retrying the question of the legality of the levy directed by that judgment, and the question of the power of the school district to vote and certify the tax ordered thereby, as is the district itself. Nor was the railroad company which applied for the injunction against the collection of this tax in any better plight. It was a taxpayer in school district No. 44, and, as long as the judgment of mandamus against that district stood unreversed, unmodified, and unimpeached for fraud or collusion, it conclusively estopped every citizen and every taxpayer in it from questioning or retrying the extent of the power of that district to vote and certify the tax ordered by the judgment, or any other question which involved the legality of that .tax. In that litigation the school district was the representative of the railroad company and of every other taxpayer in it, and the decision and the judgment, in the absence of fraud or collusion, were as conclusive upon them as upon the corporate entity itself. Freem. Judgm. § 178; 2 Black, Judgm. § 584; Clark v. Wolf, 29 Iowa, 197; Ashton v. City of Rochester (N. Y. App.) 80 N. E. 965; Railroad Co. v. Baker (Wyo.) 45 Pac. 494, 501.
It is not claimed that the injunction issued by the state court is any defense to this action, and with good reason. The circuit court of the United States had jurisdiction of the parties against whom its judgments were rendered, and of the properly which those judgments charged with liens years before the suit in the state court was commenced. When it was commenced, the federal court was proceeding by' its judgment of mandamus to collect its judgment for money. The former was, in effect, the writ of execution to enforce satisfaction of the latter, and the plaintiffs in error were, as we have seen, the ministerial officers charged under the law and the statutes with the duty of executing this writ. The tax of 50 mills on the dollar to pay the judgment had been voted, certified, levied, and placed upon the tax list of the county, pursuant to the command of the judgment of mandamus in that court, and the county clerk had delivered to the *691 county treasurer the tax list and his warrant, commanding him to collect the taxes upon it, and the statutes of Nebraska made it his duty to do so. Then it was that the railroad company and the plaintiffs in error succeeded in obtaining an injunction against the latter, forbidding them to collect the tax levied to pay the judgment by presenting to the state court a complaint without an answer, which failed to disclose the judgment of mandamus, under which the tax had been levied. No such injunction would have been granted by that court if this controlling fact had been disclosed to it. Moreover, any injunction which it could grant would, upon well-settled principles, have been without effect to stay the proceedings under the judgments of the national court. A state court cannot, by injunction, prevent a circuit court of the United States from enforcing its judgment by a mandamus to compel the levy and collection of a tax to pay it. Riggs v. Johnson Co., 6 Wall. 166; Supervisors v. Durant, 9 Wall. 415; Hawley v. Fairbanks, 108 U. S. 543, 2 Sup. Ct. 846. The injunction was, therefore, ineffectual. The railroad company was estopped from questioning the legality of the tax, and had no ground for instituting the suit in which the injunction was issued, and the plaintiffs in error had no excuse for failing to collect the tax, which had been levied in compliance with the judgment of mandamus against the school district. It was doubtless to prevent such causeless delays and evasions of duty as the record in this case discloses that the legislature of Nebraska provided, in terms, that any corporate officer whose duty it was to levy and collect the tax necessary to pay off such a judgment as that here in question should become personally liable to pay the judgment himself, if he neglected his duty (Cobbey’s Consol. St. Neb. 1891, § 4116), and it is by no means certain that one who conspires to prevent such officers from discharging this duty does not thereby incur the same liability.
It is not unworthy of notice in this connection that the question which the plaintiffs in error have vainly sought to raise in this action appears to have been settled against them on the merits by the highest judicial tribunal of the state of Nebraska, whose decision as to the extent of the powers of the municipal and quasi municipal corporations of that state, under its statutes, is controlling in the national courts. Madden v. Lancaster Co., 27 U. S. App. 528, 12 C. C. A. 566, and 65 Fed. 188. In Jackson v. Washington Co., 34 Neb. 680, 683, 686, 52 N. W. 169, 171, the contention was that the act to provide for the payment of judgments against municipal corporations, which took effect February 18, 1867, was repealed or modified by section 77 of the general revenue law of 1879, which prescribed and limited the amount of taxes that could be levied for county purposes. But the court held otherwise, and said:
“We will assume, as do counsel, that in-1879 the legislature passed a general law for the levy and collection of taxes without expressly repealing the act making provision for collecting revenue to satisfy judgments hy means of a special levy. The rule is that repeals hy implication are not favored, and, when acts upon the same subject can he harmonized hy a fair and liberal construction, it will be done. Sedg. Const. 98; Lawson v. Gibson, 18 Neb. 137, 24 N. W. 447; State v. Babcock, 21 Neb. 599, 33 N. W. 247. And this rule has especial application to cases where the subsequent statute treats of a sub *692 ject in general terms, but not expressly contradicting tbe more particular and positive provision witb reference to tbe same subject in a prior act. State v. Village of Perrysburg, 14 Ohio St. 486; Brown v. County Com’rs, 21 Pa. St. 43. In State v. Dwyer, 42 N. J. Law, 327, the court says: ‘Where a general law and a special statute come in conflict, the general law yields to the special, without regard to priority of date, and a special law will not be repealed by a general statute unless by express words or necessary implications.’ * * * There being no necessary conflict between the statutes under consideration, it follows that the appellants did not exceed their authority in making the special levy for the purpose of satisfying the judgment against the county.”
The judgment below must be affirmed, with costs, and it is so-ordered.